## AT NISI PRIUS, AT SUNBURY,

### MAY ASSIZES, 1792.

CORAM M'KEAN, CHIEF JUSTICE, AND YEATES.

# Lessee of Cornelius Cox *against* Thomas Grant, esq.

The sale of lands by county commissioners, where there is sufficient personal property to be found on the premises to pay the taxes, is void, and their deed a mere nullity. Courts of justice will examine such sales narrowly. The person in whose name a warrant or location is taken out, is a trustee for him who entered it and paid the monies.

EJECTMENT for 300 acres of land in Shamokin township. Defence taken for one undivided moiety. The plaintiff and defendant both claimed under the same location, entered in the name of Thomas Grant, dated 3d April 1769, and drawn *165] in *the land lottery directed by the governor, No. 1688. It appeared in evidence, that the location was put into the office by Alexander Grant, the father of the defendant, in his name, and that he was then eleven years old; that the lands were taken up by the said Alexander and Cornelius in partnership, and that some time afterwards, during the minority

[Cox *v.* Grant.]

of the son, the former agreed to sell to the latter the other moiety of the land for 20l. and received from him part of the consideration in whiskey and salt; that the said Cornelius put a tenant on the land, who continued several years quietly in possession, and though the said Alexander frequently saw him on the premises, he never disturbed him in his possession, nor laid any claim to the land. The said Cornelius paid the surveying fees, and obtained a deed poll on the location from one Thomas Grant of New York. Alexander Grant, in 1772, entered a *caveat* in the secretary's office against Cox's obtaining a patent, alleging that the real applier had not conveyed the location. The said Alexander obtained a judgment in Northumberland county against the said Cornelius for 9l. 8s. 8d., issued a *fi. fa.* returnable to August term 1773, upon which these lands were levied as Cox's property. On the 9th December 1782, the county commissioners conveyed by deed these lands to the defendant, the same having been also seized as the property of the plaintiff, for a small tax, in consideration of 15l. 10s. though there was at the time much more personal property on the premises than would have been sufficient to have discharged the taxes. The defendant got into possession, and afterwards, on 25th March 1788, obtained a patent for the lands.

The counsel on both sides declined speaking to the facts, and submitted the law to the decision of the court, who declared, without difficulty, that the plaintiff was entitled to a verdict.

The court said, the commissioners' sale could not possibly divest the plaintiff of his lands, there being sufficient personal property on the premises to pay the taxes, which ought to have been distrained on in the first instance. Their deed, therefore, was a mere nullity, and conveyed no title whatever. It was the duty of courts of justice to examine such sales narrowly, and if they did not appear to be strictly conformable to law, to pass the merited censure on them. But this sale of the commissioners, as well as the sheriff's levying on these lands, at the suit of the defendant's father, and during his minority, operated very materially against the title of the defendant. The right of the plaintiff, to the lands in controversy, was affirmed by the defendant personally, in purchasing them at the commissioners' *sales, and by the father, who must at least be considered as the agent [*166 of the son, in permitting the sheriff to levy upon them, in his suit against Cox.

But independent of these peculiar marked circumstances, we must take notice of the usual practice which has prevailed in the country to obtain a title to lands from the late proprietary offices. The rule which obtained amongst them, that a person should not be permitted to take out a warrant or location for more than 300 acres of land, was probably first intro-

[Cox *v.* Grant.]

duced to prevent the engrossing of real property, and was perhaps continued afterwards for the emolument of the officers. But we well know, that in general, the name in the location was merely nominal, and used as a kind of scaffolding for the building up a formal and regular title. The person whose name was used, stands as a mere trustee for him who took out the warrant or entered the location, and paid the surveyor and other officers. The latter is the *cestui que* use. It has been long settled, that one purchasing lands in the name of another, and paying the money, it is a resulting trust. Vide 1 Wms. 321. 1 Wils. 21. 1 Equ. Cas. Abr. 380. 2 Equ. Cas. Abr. 744. 1 Atky. 60. 2 Atky. 150. Here Alexander Grant made use of his son's name, merely for the purpose of obtaining the title, and having sold to the plaintiff, his sale must be established.

The lessor of the plaintiff hereupon agreed to pay the defendant the purchase money, interest and fees of patenting the lands, upon his conveyance of the patent right to him; and the jury, without leaving the bar, found a verdict for the plaintiff, with six pence damages and six pence costs.

Messrs. Duncan, Kittera and Daniel Smith *pro quer.*

Messrs. Ingersoll and C. Smith *pro def.*

Cited in 2 Yeates, 120, as establishing the principle that where one enters a location in the name of another, it shall enure for the benefit of the party applying, without other proof. Cited for the same purpose in 4 S. & R., 334; 1 W. & S., 327; 1 W. & S.. 493; 18 Pa., 295; 58 Pa., 287; 61 Pa., 454.

Cited in 1 Watts, 73, where the court says: "In Cox *v.* Grant, the court speak of applications and warrants indiscriminately, and make no distinction as to the nature of the proof that is required or admissible to prove the ownership thereof to be in a person different from the locatee or warrantee named in the application or warrant."

Cited in 4 W. & S., 340, in support of the decision that a town lot cannot be assessed and sold by the treasurer when either the person of the owner or his property might have been taken for the payment of taxes.