**John BENSINGER, Appellant**

v.

**UNIVERSITY OF PITTSBURGH MEDICAL CENTER t/a/d/b/a Western Psychiatric Institute and Clinic, Appellee.**

Superior Court of Pennsylvania.

Argued April 1, 2014.

Filed Aug. 19, 2014.

Daniel W. Ernsberger, Pittsburgh, for appellant.

John J. Myers, Pittsburgh, for appellee.

BEFORE: GANTMAN, P.J., FORD ELLIOTT, P.J.E. and OLSON, J.

OPINION BY OLSON, J.:

Appellant, John Bensinger, appeals from the judgment entered in favor of the University of Pittsburgh Medical Center t/a/d/b/a Western Psychiatric Institute and Clinic ("Western Psych") on July 24, 2013. Among other issues, Appellant claims that the trial court erred in granting Western Psych's motion to strike Appellant's jury demand. We hold that there is no right to a jury trial under the Pennsylvania Whistleblower Law, 43 P.S. § 1421 *et seq.* For this reason, and because we conclude that none of Appellant's other claims merit relief, we affirm.

The factual and procedural background of this case is as follows.[1] From Decem-

---

1. In various parts of his brief, Appellant appears to challenge the factual findings made by the trial court. Except as noted in footnote 3, *infra,* our review of the record indicates that the trial court's factual findings were supported by the record.

ber 31, 2001 until July 10, 2009, Appellant was employed by Western Psych's Center for Psychiatric and Chemical Dependency Services ("CPCDS"). CPCDS, which is a division of Western Psych's Addiction Medicine Services unit ("AMS"), treats patients with substance abuse problems and related mental disorders. CPCDS is licensed by the Pennsylvania Bureau of Drug and Alcohol Programs, Division of Drug and Alcohol Program Licensure ("DAPL"). DAPL conducts periodic reviews of CPCDS and other AMS programs that it licenses.

In October 2008, Appellant was promoted to CPCDS' facility director. In this position, Appellant reported to Western Psych's vice-president, Eleanor Medved ("Medved"). Appellant also reported to Dr. Dennis Daley ("Daley"), the chief of AMS. Appellant participated in the DAPL reviews and was responsible for ensuring DAPL had access to relevant materials.

Daley was employed as an associate professor at the University of Pittsburgh and by University of Pittsburgh Physicians, a subsidiary of UPMC. Daley, along with Dr. Thomas Kelly ("Kelly"), helped obtain grant money from the National Institute on Drug Abuse to conduct research relating to drug abuse. As this research was federally funded, it was subject to federal regulations. Federal regulations required the University of Pittsburgh to have certain research approved by an institutional review board. See 45 C.F.R. § 46.103(b). Furthermore, as Daley worked for a DAPL licensee, he was subject to state regulations promulgated by DAPL.

On July 8 or 9, 2009, Cindy Hurney ("Hurney"), an AMS secretary, discovered a referral agreement between Western Psych and the Matilda Theiss Child Development Center on a copy machine. Hurney recognized that the date on the agreement had been altered from June 6, 2007

to June 6, 2009. Hurney informed the University of Pittsburgh's counsel, Al Ciocco ("Ciocco"), of the altered date. Ciocco directed Daley to inform Western Psych's Chief Executive Officer, Claudia Roth ("Roth"), of the altered agreement, which he did on July 10, 2009. Roth then informed Medved of the altered agreement. Medved directed Daley to check all of the referral agreements to ascertain whether other agreements had been altered. Medved also directed Daley to, along with a witness, confront Appellant to ascertain whether he was aware of the alterations.

Daley and AMS' Chief Medical Officer, Dr. Antoine Douaihy, confronted Appellant. Appellant admitted to altering the agreement. Daley informed Medved of the confession. Medved along with Roth, and the head of human resources, Katie Devine ("Devine"), decided to fire Appellant immediately for altering the agreement. Daley was not involved in the decision to terminate Appellant. When Medved communicated the termination decision to Appellant, he took full responsibility for his actions. He repeated this admission the next day while cleaning out his office.

On December 29, 2009, Appellant filed a complaint against Western Psych which alleged that he was fired for taking action protected by the Whistleblower Law. Of particular relevance to one of the issues raised in the present appeal, is the fact that Appellant's complaint included a jury trial demand. On February 1, 2013, the trial court granted Western Psych's motion to strike the jury trial demand.

On October 15, 2010, Appellant presented a motion to compel the production of various categories of documents. Specifically, Appellant sought documents relating to Daley's doctoral education. He also sought Kelly's research files. After argument and briefing, on December 14, 2010

the trial court denied Appellant's motion to compel.

A three-day bench trial was conducted from March 19–21, 2013. Appellant testified that he was fired, in part, because he informed Daley and Medved that Daley's research needed to be approved by DAPL. He produced no evidence to corroborate his testimony.[2] Appellant also testified that Daley received his Ph.D. from an institution not authorized to grant Ph.D.s and that Daley married an employee. Appellant did not testify that he reported Daley's marriage to any other individual. However, he did testify that Daley received his Ph.D. from a diploma mill.[3]

On April 10, 2013, the trial court issued findings of fact and conclusions of law and entered a verdict in favor of Western Psych. It concluded that Appellant did not report malfeasance by Daley and that Appellant was discharged for forging a document. On April, 18, 2013, Appellant filed a post-trial motion. That motion was denied on July 11, 2013. This timely appeal followed.[4]

Appellant presents four issues for our review:

1. Did the [trial] court err when it granted a motion to strike the jury trial demand[?]

2. Must a new trial be granted because the [trial] court excluded evidence[?]

3. Did the trial court fail to decide all the issues, and make all appropriate findings of fact and conclusions of law necessary to evaluate the credibility of witnesses[?]

4. Was the verdict of the trial court unsupported by the evidence[?]

Appellant's Brief at 4 (capitalization removed).[5]

■ In his first issue on appeal, Appellant contends that the trial court erred by granting Western Psych's motion to strike his jury trial demand. Appellant contends that he has a constitutional right to a jury trial in an action brought pursuant to the Whistleblower Law.[6] As resolution of this issue requires both statutory and constitu-

---

**2.** Dorothy Sandstrong, Hurney, Medved, and Daley denied that Appellant reported Daley for violating any law, regulation, or institutional policy.

**3.** The trial court stated that Appellant did not testify that he made a report to anyone regarding Daley's allegedly fraudulent doctorate or his personal relationship with an employee. Findings of Fact and Conclusions of Law, 4/10/13, at 5. The record reflects, however, that Appellant did testify that he reported Daley's allegedly fraudulent Ph.D. to Medved. *See* N.T., 3/19/13, at 72–73. As discussed below, this factual finding did not impact the trial court's dispositive conclusion of law relating to Western Psych's affirmative defense.

**4.** On August 5, 2013, the trial court ordered Appellant to file a concise statement of errors complained of on appeal ("concise statement"). *See* Pa.R.A.P. 1925(b). On August 14, 2013, Appellant filed his concise statement. On September 3, 2013, the trial court issued a statement in lieu of a Rule 1925(a) opinion. In that statement, the trial court

adopted by reference its April 10, 2013 findings of fact and conclusions of law. All issues raised on appeal were included in Appellant's concise statement.

**5.** We have re-numbered the issues for ease of disposition.

**6.** Appellant only argues that he has a right to a jury trial under the Pennsylvania Constitution. It is well-settled that, unlike the Sixth Amendment to the United States Constitution's right to a jury trial in criminal cases, the Seventh Amendment jury trial guarantee in civil cases has not been applied to the states by incorporation into the Fourteenth Amendment. *Compare Duncan v. Louisiana,* 391 U.S. 145, 148–154, 88 S.Ct. 1444, 20 L.Ed.2d 491 (1968) (Sixth Amendment incorporated) *with Minneapolis & St. Louis R. Co. v. Bombolis,* 241 U.S. 211, 216–223, 36 S.Ct. 595, 60 L.Ed. 961 (1916) (Seventh Amendment not incorporated).

tional interpretation, our standard of review is *de novo* and our scope of review is plenary. *Pilchesky v. Lackawanna Cnty.*, —— Pa. ——, 88 A.3d 954, 965 (2014); *see Buckwalter v. Borough of Phoenixville*, 603 Pa. 534, 985 A.2d 728, 730 (2009).

As we attempt to avoid ruling on constitutional issues if the claim can be resolved on non-constitutional grounds, *In re E.A.*, —— Pa. ——, 82 A.3d 370, 384 (2013) (citation omitted), we first consider whether Appellant has a statutory right to a jury trial. When interpreting a statute, we are guided by the Statutory Construction Act, 1 Pa.C.S.A. § 1501 *et seq. See Commonwealth v. Raban*, —— Pa. ——, 85 A.3d 467, 475 (2014). "[O]ur paramount interpretative task is to give effect to the intent of our General Assembly in enacting the" Whistleblower Law. *See Commonwealth v. Warren*, 84 A.3d 1092, 1095 (Pa.Super.2014) (citation omitted). "Generally, the best indication of the General Assembly's intent may be found in the plain language of the statute." *Commonwealth v. Spence*, —— Pa. ——, 91 A.3d 44, 46 (2014) (citation omitted).

The Whistleblower Law is "chiefly a remedial measure intended to enhance openness in government and compel the government's compliance with the law by protecting those who inform authorities of wrongdoing." *O'Rourke v. Commonwealth*, 566 Pa. 161, 778 A.2d 1194, 1202 (2001) (internal quotation marks and citation omitted). It "is specifically designed to protect employees from adverse employment actions when making a good faith report regarding an instance of wrongdoing or waste." *Pa. Game Com'n v. State Civil Serv. Com'n (Toth)*, 561 Pa. 19, 747 A.2d 887, 892 n. 10 (2000).

The Whistleblower Law provides, in relevant part, that:

> **A court,** in rendering a judgment in an action brought under this act, shall order, as **the court** considers appropriate, reinstatement of the employee, the payment of back wages, full reinstatement of fringe benefits and seniority rights, actual damages or any combination of these remedies. **A court** may also award the complainant all or a portion of the costs of litigation, including reasonable attorney fees and witness fees, if **the court** determines that the award is appropriate.

43 P.S. § 1425 (emphasis added).[7] The plain language of this section refers to the court four times. It never refers to the jury. Thus, the plain language of the statute makes clear that Appellant did not possess a statutory right to a jury trial under the Whistleblower Law.[8]

7. On July 2, 2014, Governor Thomas Corbett signed into law a bill that will change the wording of section 1425. The new language, which goes into effect August 31, 2014, provides that:

> A court, in rendering a judgment in an action brought under this act, shall order, as the court considers appropriate, reinstatement of the employee, the payment of back wages, full reinstatement of fringe benefits and seniority rights, actual damages or any combination of these remedies. A court **shall** also award the complainant all or a portion of the costs of litigation, including reasonable attorney fees and wit-

ness fees, **if the complainant prevails in the civil action.**
2014 Pa. Legis. Serv. Act 2014–87 (July 2, 2014) (amended language in bold). The change only makes attorney fee awards mandatory instead of discretionary. It does not impact our analysis regarding Appellant's right to a jury trial.

8. We also note that there is nothing in the legislative history of the Whistleblower Law that would indicate that our General Assembly meant to confer a jury trial right. *See* 1985 House Legislative Journal 1230–1233, 1277–1278 (June 18, 1985).

This conclusion is consistent with decisions by our Supreme Court in *Mishoe v. Erie Ins. Co.*, 573 Pa. 267, 824 A.2d 1153, 1154 (2003), and *Wertz v. Chapman Tp.*, 559 Pa. 630, 741 A.2d 1272 (1999), and our decision in *Fazio v. Guardian Life Ins. Co. of Am.*, 62 A.3d 396, 399 (Pa.Super.2012), *appeal denied*, 621 Pa. 658, 72 A.3d 604 (2013). In those three cases, appellate courts in this Commonwealth concluded that a statutory right to a jury trial does not exist under statutes with similar language to the Whistleblower Law.

In *Mishoe*, our Supreme Court considered whether there is a right to a jury trial in a bad faith insurance claim. Specifically, our Supreme Court considered whether there is a right to a jury trial under the following statutory provision:

> In an action arising under an insurance policy, if **the court** finds that the insurer has acted in bad faith toward the insured, **the court** may take all of the following actions:
> (1) Award interest on the amount of the claim from the date the claim was made by the insured in an amount equal to the prime rate of interest plus 3%.
> (2) Award punitive damages against the insurer.
> (3) Assess court costs and attorney fees against the insurer.

42 Pa.C.S.A. § 8371 (emphasis added).

Our Supreme Court considered three factors when determining that the statute does not provide a right to a jury trial. First, it considered the fact that the bad faith insurance statute does not mention a right to a jury trial. *Mishoe*, 824 A.2d at 1156. Second, it considered the statute's use of the phrase "the court." *Id.* Finally, it relied upon the lack of any legislative history indicating that our General Assembly intended to confer a jury trial right in bad faith insurance actions. *Id.* As mentioned above, the same three circum-

stances are present with the Whistleblower Law.

In *Wertz*, our Supreme Court considered whether there is a right to a jury trial in an action brought under the Pennsylvania Human Relations Act ("PHRA"). The PHRA provides that:

> If **the court** finds that the respondent has engaged in or is engaging in an unlawful discriminatory practice charged in the complaint, **the court** shall enjoin the respondent from engaging in such unlawful discriminatory practice and order affirmative action which may include, but is not limited to, reinstatement or hiring of employees, granting of back pay, or any other legal or equitable relief as **the court** deems appropriate. Back pay liability shall not accrue from a date more than three years prior to the filing of a complaint charging violations of this act.

43 P.S. § 962(c)(3) (emphasis added).

Our Supreme Court considered the same three factors as in *Mishoe* when determining that the PHRA does not provide a right to a jury trial. First, it considered the fact that the PHRA does not mention a right to a jury trial. *Wertz*, 741 A.2d at 1274. Second, it considered the PHRA's employment of the phrase "the court." *Id.* Finally, it relied upon the lack of any legislative history indicating that our General Assembly meant to confer a jury trial right in PHRA actions. *Id.* at 1274–1275. As noted above, the same three circumstances are present with the Whistleblower Law.

In *Fazio*, this Court considered whether there is a right to a jury trial under the Unfair Trade Practice and Consumer Protection Law ("UTPCPL"). The UTPCPL provides that:

> Any person who purchases or leases goods or services primarily for personal,

family or household purposes and thereby suffers any ascertainable loss of money or property, real or personal, as a result of the use or employment by any person of a method, act or practice declared unlawful by section 3 of this act, may bring a private action to recover actual damages or one hundred dollars ($100[.00]), whichever is greater. **The court** may, in its discretion, award up to three times the actual damages sustained, but not less than one hundred dollars ($100[.00]), and may provide such additional relief as it deems necessary or proper. **The court** may award to the plaintiff, in addition to other relief provided in this section, costs and reasonable attorney fees.

73 P.S. § 201–9.2(a) (emphasis added).

In *Fazio,* this Court considered the first two factors considered by our Supreme Court in *Mishoe* and *Wertz* when determining that the UTPCPL does not provide a right to a jury trial. First, we considered the fact that the UTPCPL does not mention a right to a jury trial. *Fazio,* 62 A.3d at 402. Second, we considered the UTPCPL's use of "the court." *Id.* As recognized above, the same two circumstances are present with the Whistleblower Law. Applying these Pennsylvania precedents, we hold that the Whistleblower Law does not create a statutory right to a jury trial.

■ Having determined that there is no statutory right to a jury trial under the Whistleblower Law, we next turn to whether Appellant had a right to a jury trial under the Pennsylvania Constitution. Our Constitution provides that, "Trial by jury shall be as heretofore, and the right thereof remain inviolate. The General assembly may provide, however, by law, that a verdict may be rendered by not less than five-sixths of the jury in any civil case." Pa. Const., art. I, § 6.

■ Our Supreme Court has explained that two requirements must be satisfied for a jury trial to be guaranteed by our Constitution. First, it must be shown that a right to a jury trial "would have been required in 1790, when the Pennsylvania Constitution was adopted." *Commonwealth v. One (1) 1984 Z–28 Camaro Coupe,* 530 Pa. 523, 610 A.2d 36, 38 (1992) (internal quotation marks and citations omitted) (*"Camaro Coupe"*); *William Goldman Theatres, Inc. v. Dana,* 405 Pa. 83, 173 A.2d 59, 64 (1961) (citations omitted); *Premier Cereal & Beverage Co. v. Pa. Alcohol Permit Bd.,* 292 Pa. 127, 140 A. 858, 859 (1928); *Van Swartow v. Commonwealth,* 24 Pa. 131 (1854). Second, the action must have a common law basis, not a statutory basis. *Camaro Coupe,* 610 A.2d at 38, *citing Appeal of Watson,* 377 Pa. 495, 105 A.2d 576, 578 (1954). For the reasons set forth below, we conclude that whistleblower claims meet neither of these requirements.

Appellant's whistleblower claim has no common law analogue that existed in 1790. As we have stated, "Historically, Pennsylvania has recognized an employer's unfettered right to discharge an at-will employee for any or no reason in the absence of a contractual or statutory prohibition." *Field v. Phila. Elec. Co.,* 388 Pa.Super. 400, 565 A.2d 1170, 1179 (1989) (emphasis added), *citing Henry v. Pittsburgh & Lake Erie R.R. Co.,* 139 Pa. 289, 21 A. 157 (1891); *see Coffin v. Landis,* 46 Pa. 426 (1864).

Whistleblower protections are relatively new in this Commonwealth. The first time that any court in this Commonwealth recognized that a wrongful discharge action may be cognizable was in *Geary v. U.S. Steel Corp.,* 456 Pa. 171, 319 A.2d 174 (1974). In *Geary,* an employee brought suit claiming that he was fired for inform-

ing his superiors that a product he was selling was unsafe. Our Supreme Court determined that the employee's complaint failed to state a claim; however, it concluded that in some limited circumstances a wrongful discharge action may state a claim for which relief may be granted. *See id.* at 184. Twelve years later, our General Assembly passed the Whistleblower Law.

Appellant contends that *Geary* recognized that whistleblower actions have roots in cases from the earliest days of our Commonwealth. *See* Appellant's Brief at 27. However, the portion of the *Geary* decision that Appellant quotes is in a discussion of "whether the time has come to impose judicial restrictions on an employer's power of discharge." *Geary,* 319 A.2d at 176. Thus, it is clear that our Supreme Court believed that the novel whistleblower protection claim advanced by the plaintiff in *Geary* was unprecedented in Pennsylvania law and was not something that had existed since 1790.

The two cases cited in *Geary,* and relied upon by Appellant, illustrate this point. In *Sommer v. Wilt,* 4 Serg. & Rawle 19 (Pa.1818), our Supreme Court considered a dispute between a debtor and a creditor. The creditor sought, and received, a writ of execution for twice the value of the judgment that was entered against the debtor. The debtor then filed suit against the creditor. The creditor claimed that the debtor's complaint failed to state a cause of action. Our Supreme Court determined that the evidence was sufficient for an abuse of judicial process claim. *Id.* at 22–23. This is not analogous to a case of an employer terminating an employee for revealing waste or malfeasance.

Likewise, in *Wheatley v. Baugh,* 25 Pa. 528, 530–536 (1855), our Supreme Court considered whether it was lawful to pump water out of a mine when that action re-

sulted in a neighbor losing the benefit of a well on his property. *Wheatley* did not address employment law or the ability of an employer to discharge an employee. Appellant also cites two cases in a footnote. *See* Appellant's Brief at 27 n. 7. Neither of those cases is on point. In *Work v. Hoofnagle,* 1 Yeates 506, 507–508 (Pa.1795), our Supreme Court determined that a prothonotary was liable for falsifying records that assisted one party. *Work* did not address employment law. Lastly, in *Cox v. Grant,* 1 Yeates 164, 165–166 (Pa.1792), our Supreme Court held that real estate could not be sold to satisfy a tax debt when the personal property on the real estate was greater than the tax debt. Again, *Cox* did not address employment law.

Appellant's argument is essentially that the above cases support his right to a jury trial because they recognized a cause of action against a defendant whenever the plaintiff established a specific intent to harm. However, this argument ignores our Supreme Court's prior decisions regarding the right to a jury trial. In both an insurance bad faith action and a PHRA case there is arguably a specific intent to cause harm. Nonetheless, in *Mishoe* and *Wertz,* our Supreme Court determined that there was no constitutional right to a jury trial in those settings. If Appellant's argument were taken to its logical conclusion, a jury trial would be required in any tort action that involved a theoretical intent to injure. However, our Supreme Court requires a closer nexus between a cause of action and an analogous common law doctrine existing in 1790 in order for a jury trial to be guaranteed by our Constitution.

As we have stated, at-will employment has been tempered with the emergence of the common law doctrine of wrongful dismissal whereby an employee may

premise a cause of action on either tort or contract principles. H. Perritt, *Employee Dismissal Law and Practice* (1984). [The only] exception that has emerged in this state allow[s] recovery for a termination of employment [where the employer] has violated a significant and recognized public policy.

*Field,* 565 A.2d at 1179. In 1991, this Court clarified that a wrongful discharge action may not be brought solely because the employer had a specific intent to harm the employee. *Yetter v. Ward Trucking Corp.,* 401 Pa.Super. 467, 585 A.2d 1022, 1025–1026 (1991), *appeal denied,* 529 Pa. 623, 600 A.2d 539 (1991) (internal citation omitted). As of 1996, courts of this Commonwealth only recognized three public policies significant enough that violation could result in a wrongful discharge action. Those three policies were permitting individuals to serve on juries without fear of losing their jobs, permitting certain convicts to maintain their employment, and preventing nuclear disaster. *Smyth v. Pillsbury Co.,* 914 F.Supp. 97, 99 (E.D.Pa. 1996) (citations omitted). Notably absent among these common law exceptions are general whistleblower claims. That is because claims similar to Appellant's, brought pursuant to the Pennsylvania Whistleblower Law, are statutory creations.

■ Appellant also ignores the distinction between public and private employees in the common law. The Whistleblower Law only covers employees of public bod-

ies, or a body funded by a public body. *See* 43 P.S. § 1422. On the other hand, common law wrongful discharge actions "are generally available only to private sector employees[.]" Nancy M. Modesitt, *The Garcetti Virus,* 80 U. Cin. L.Rev. 137, 139 (2011) (footnote omitted). The reason is straight forward, *i.e.,* prior to 1978 it was generally accepted that the Commonwealth possessed sovereign immunity. *See Mayle v. Pa. Dep't of Highways,* 479 Pa. 384, 388 A.2d 709, 710 (1978),[9] *citing O'Connor v. Pittsburgh,* 18 Pa. 187, 189 (1851). The Commonwealth had not waived this sovereign immunity with respect to whistleblower claims until passage of the Whistleblower Law. Thus, it is evident that a common law cause of action equivalent to a claim under the Whistleblower Law did not exist in 1790.

Finally, we note that several persuasive authorities have come to the same conclusion.[10] The Supreme Court of New Jersey has held that there is no right to a jury trial under Pennsylvania's Whistleblower Law. *Ballinger v. Del. River Port Auth.,* 172 N.J. 586, 800 A.2d 97, 105 (2002) (citation omitted). Several courts of common pleas have likewise determined that there is no right to a jury trial under the Whistleblower Law. *See Miller v. N. Tier Career Ctr.,* 49 Pa. D. & C.4th 413, 417 (C.C.P. Bradford 2000); *Wilhelm v. Borough of Braddock,* 28 Pa. D. & C.4th 211, 212–213 (C.C.P. Allegheny 1996); *Clark v. Lancaster City Hous. Auth.,* 14 Pa. D. & C.4th 411, 412–413 (C.C.P. Lancaster

---

9. In *Mayle,* our Supreme Court overruled almost 130 years of precedent and declared that the Commonwealth did not possess sovereign immunity. *Mayle,* 388 A.2d at 720. One day after returning from its summer recess, our House of Representatives passed a bill (which later became Act 152), which codified the doctrine of sovereign immunity. *See* 1978 P.L. 788 (now codified at 42 Pa.C.S.A. §§ 8522, 8524–8526, and 8528).

10. *Cf. Shedden v. Anadarko E & P Co.,* 88 A.3d 228, 233 n. 3 (Pa.Super.2014) (citation omitted) (decisions of courts in sister states are persuasive); *Commonwealth v. Herbert,* 85 A.3d 558, 565 n. 8 (Pa.Super.2014) (citation omitted) (decisions of federal courts are persuasive); *Sysco Corp. v. FW Chocolatier, LLC,* 85 A.3d 515, 520 n. 2 (Pa.Super.2014) (citation omitted) (decisions of the courts of common pleas are persuasive).

1992); *Zerbe v. City of Sunbury,* 7 Pa. D. & C.4th 483, 499–501 (C.C.P. Northumberland 1990). The United States District Court for the Eastern District of Pennsylvania has similarly stated that, "It is highly doubtful ... that there was any analogue to Whistleblower Law claims extant [in 1791]." *Stoneback v. ArtsQuest,* 2012 WL 4963624, at *8 (E.D.Pa. Oct. 17, 2012)

For all of these reasons, we conclude that there was no common law analogue to a whistleblower claim that encompassed a right to a jury trial in 1790. Furthermore, a whistleblower claim is statutorily based, not common law based. Accordingly, we hold that there is no right to a jury trial under the Pennsylvania Constitution for a claim brought pursuant to our Commonwealth's Whistleblower Law. As there is also no statutory right to a jury trial under the Whistleblower Law, the trial court correctly granted Western Psych's motion to strike Appellant's jury trial demand.

 In his second issue on appeal, Appellant contends that the trial court erred in denying his motion to compel discovery.[11] "Our standard of review when determining the propriety of a discovery order is whether the trial court committed an abuse of discretion." *Berg v. Nationwide Mut. Ins. Co.,* 44 A.3d 1164, 1178 n. 8 (Pa.Super.2012), *appeal denied,* 619 Pa. 719, 65 A.3d 412 (2013) (citation omitted).

Appellant contends that the trial court erred in denying his motion to compel Kelly to produce his research records. Appellant also contends that the trial court erred in denying his motion to compel various documents, including a doctor-

al dissertation, relating to Daley's Ph.D. Appellant maintains that the requested documents were essential to proving the existence of the malfeasance he allegedly reported, that such malfeasance was not merely technical or minimal in nature, and that his discharge was retaliatory in nature and in violation of the Whistleblower Law. The trial court denied Appellant's requests because it found that, since Western Psych had not alleged that the proffered wrongdoing was merely technical or minimal in nature, the documents were not relevant to the case at bar. Western Psych contends that Appellant waived this issue by failing to include it in his post-trial motion. In the alternative, Western Psych contends that the trial court's refusal to compel discovery was correct.

 We first address Western Psych's contention that Appellant has waived this issue. Pennsylvania Rule of Civil Procedure 227.1 provides, in relevant part that, "[p]ost-trial motions shall be filed within ten days after ... the filing of the decision in the case of a trial without jury." Pa. R.C.P. 227.1(c)(2). Failure to raise an issue in a post-trial motion waives appellate review of the claim. *See D.L. Forrey & Assocs., Inc. v. Fuel City Truck Stop, Inc.,* 71 A.3d 915, 919 (Pa.Super.2013). However, the note to Rule 227.1 specifically provides that, "A motion for post-trial relief may not be filed [as] to ... motions relating to discovery[.]" Pa. R.C.P. 227.1(c) note; *see Bostick v. Schall's Brakes & Repairs, Inc.,* 725 A.2d 1232, 1236 (Pa.Super.1999), *appeal denied,* 560 Pa. 694, 743 A.2d 912 (1999). As such, Appellant was not required to file a post-

11. Appellant's statement of questions involved frames this question as the trial court's exclusion of evidence. However, nowhere in Appellant's brief does he point to any ruling by the trial court excluding evidence. *See* Pa. R.A.P. 2117(c). Furthermore, the argument section of Appellant's brief focuses on the trial court's rulings with respect to the motion to compel. Therefore, we conclude that Appellant has waived any argument related to alleged exclusion of evidence by the trial court during trial. *See* Pa.R.A.P. 2101, 2117(c), 2119(a).

trial motion with respect to this claim and the issue is properly preserved for our review.

■ We next turn to the merits of Appellant's claim that the trial court erred in denying his motion to compel the production of Kelly's research files. Appellant argues that Kelly's research files were necessary to "prove that [ ] Daley's failure to report his research to the [Commonwealth] of Pennsylvania was not merely technical or minimal in nature." Appellant's Brief at 16 (internal quotation marks omitted). Appellant also argues that the trial court erred in denying his motion to compel documents related to Daley's alleged fraudulent Ph.D. He avers that the evidence was relevant because "the credibility of [ ] Daley was at issue and the existence of a bogus Ph[.]D[.] degree goes to the credibility of [ ] Daley." *Id.* at 20. He further argues that the evidence "address[ed] the merits of the case because the research grant was to be done by a person with approved credentials." *Id.*

■ Assuming, *arguendo*, that the trial court erred by denying Appellant's motion to compel Kelly's research files and Daley's academic files, such error was harmless.[12] "It shall be a defense to an action under th[e Whistleblower Law] if the defendant proves by a preponderance of the evidence that the action by the employer occurred for separate and legitimate reasons, which are not merely pretextual." 43 P.S. § 1424(c). The trial court concluded that Appellant was fired for a separate and legitimate reason, *i.e.*, altering the date on the agreement, which was not pretextual. Findings of Fact and Conclusions of Law, 4/10/13, at 6.

■ Appellant does not argue that Kelly's research files would have been relevant in determining whether Western Psych terminated him for a separate, legitimate reason. Instead, he only argues that the files were relevant to proving his *prima facie* case.[13] *See* 43 P.S. § 1422 (defining wrongdoing as a non-technical or non-minimal violation). Accordingly, any error in denying Appellant's motion to compel Kelly's research files was harmless.

Furthermore, as noted above, Daley did not participate in the decision to fire Appellant. Findings of Fact and Conclusions of Law, 4/10/13, at 4. Instead, the decision to fire Appellant was made by Medved, Roth, and Devine. N.T., 3/21/13, at 249. Medved and Devine both testified at trial. Devine testified that Appellant was terminated for "altering a document." *Id.* at 321. She also testified that there was no discussion regarding Appellant's alleged whistleblowing activities during the meetings at which Western Psych decided to terminate Appellant. *Id.* at 321–322. Medved testified that, "The decision to terminate [Appellant] was based on that altered document." *Id.* at 242, 253.

Once Western Psych presented evidence that Appellant was terminated for a reason unrelated to his alleged whistleblowing activity, the burden then shifted to Appellant to prove that the proffered reason, *i.e.*, his alteration of the agreement, was pretextu-

---

**12.** "[A]n error is harmless if the court determines that the error could not have contributed to the verdict[.]" *Commonwealth v. Sandusky*, 77 A.3d 663, 668 (Pa.Super.2013), *appeal denied*, 835 MAL 2013 (Pa. Apr. 25, 2014) (citation omitted).

**13.** "[T]o make out a *prima facie* case [a plaintiff must prove] prior to the alleged acts of retaliation, he had made a good faith report of wrongdoing to appropriate authorities … [and] must come forward with some evidence of a connection between the report of wrongdoing and the alleged retaliatory acts." *O'Rourke*, 778 A.2d at 1200 (internal citation omitted).

al. *Watson v. City of Phila.*, 162 Pa. Cmwlth. 340, 638 A.2d 489, 492 (1994), *citing Feingold v. Se. Pa. Trans. Authority*, 512 Pa. 567, 517 A.2d 1270 (1986). Appellant presented no such evidence. Thus, the trial court determined that Western Psych had proven the affirmative defense.

This determination relied solely upon the testimony of witnesses other than Daley. Thus, even if the trial court would have permitted discovery relating to Daley's alleged fraudulent Ph.D. and Appellant was able to convince the trial court not to give any weight to Daley's testimony, it would not have impacted the trial court's determination that Appellant was terminated for a separate and legitimate reason. Appellant tangentially attacks this conclusion by stating that if Daley were found not to be credible, it would also impact the credibility of Medved. *See* Appellant's Brief at 14.

Appellant's argument, however, rests solely upon speculation. He contends that, if it were proven that Daley received his Ph.D. from a diploma mill, then the trial court may have determined that Medved was not credible because Medved may have been covering up for Daley. *See id.* Although Appellant presented evidence as to Daley's alleged fraudulent diploma, N.T., 3/19/13, at 72–73, he never attempted to show that Medved was covering for Daley. Thus, Appellant's argument that Medved's credibility would be harmed if Daley were found not to be credible is without merit. Furthermore, Appellant offers no explanation as to how or why Devine's credibility would have been adversely impacted if Daley were found to lack credibility. Accordingly, Appellant's argument that Daley's credibility was key to the other witnesses' credibility is without merit. As the other witnesses, *i.e.*, Medved and Devine, were the only individuals who testified as to the reasons for Appellant's termination, the introduction of evidence regarding Daley's credibility would not have impacted the trial court's determination that Appellant was terminated for a separate legitimate reason. Hence, any error by the trial court in denying Appellant's motion to compel the production of documents relating to Daley's alleged fraudulent Ph.D. was harmless. Therefore, Appellant is not entitled to relief with respect to his second issue on appeal.

In his third issue on appeal, Appellant contends that the trial court's findings of fact and conclusions of law were insufficient to render a verdict. Specifically, Appellant claims that the trial court made no findings as to alleged wrongdoing by Western Psych or authenticity of Daley's Ph.D.; instead, the trial court merely addressed the justifiable reason for Appellant's termination, namely his confession to altering the agreement. As this issue requires us to interpret a rule of civil procedure, our standard of review is *de novo* and our scope of review is plenary. *Roth v. Ross*, 85 A.3d 590, 592 (Pa.Super.2014).

Pennsylvania Rule of Civil Procedure 1038 provides that, in a bench trial, "[t]he decision of the trial judge may consist only of general findings as to all parties but shall dispose of all claims for relief. The trial judge may include as part of the decision specific findings of fact and conclusions of law with appropriate discussion." Pa.R.C.P. 1038(b); *see Pace Const. Managers, Inc. v. Muncy Sch. Dist.*, 911 A.2d 585, 591 (Pa.Cmwlth.2006); *Turney Media Fuel, Inc. v. Toll Bros.*, 725 A.2d 836, 839 (Pa.Super.1999). Thus, the trial court was not required to make findings of fact and conclusions of law. It was only required to dispose of all claims. Appellant only alleged one cause of action in this case, *i.e.*, a violation of the Whistleblower Law. The trial court's verdict clearly dis-

posed of this claim. *See* Findings of Fact and Conclusions of Law, 4/10/13, at 7. Accordingly, Appellant's third issue on appeal is without merit.[14]

▉▉▉▉ Finally, Appellant claims that the verdict is against the weight of the evidence. This issue is waived. As mentioned above, failure to include certain issues in a post-trial motion waives appellate review. Pa. R.C.P. 227.1(c)(2); *D.L. Forrey*, 71 A.3d at 919. Included in those issues that must be raised in a post-trial motion is a claim that the verdict was against the weight of the evidence. *See Morin v. Brassington*, 871 A.2d 844, 851 (Pa.Super.2005).

Nowhere within Appellant's 16–page post-trial motion did he allege that the verdict was against the weight of the evidence. Furthermore, in his prayer for relief, Appellant cited three grounds for relief—those three issues encapsulated by the first through third issues raised on appeal. *See* Post–Trial Motion, 4/18/13, at 16. In his reply brief, Appellant argues that he preserved the issue by including a claim that the verdict was against the weight of the evidence in his brief in support of his post-trial motion. *See* Appellant's Reply at 13. However, this Court has held that inclusion of an issue in a brief in support of a post-trial motion is insufficient to preserve the issue under Rule 227.1. *Cherry v. Willer*, 317 Pa.Super. 58, 463 A.2d 1082, 1084 (1983).

▉▉▉▉ Appellant also argues that his proposed findings of fact and conclusions of law preserved his weight of the evidence claim. This argument is without merit. Appellant's proposed findings of fact and conclusions of law, by their very nature, were filed prior to the trial court issuing a verdict in this case. It is axiomatic that a claim asserting that a verdict is against the weight of the evidence can only be raised after the verdict has been entered by the court. This interpretation is also supported by another portion of Rule 227.1. That provision provides that, in certain circumstances, issues must be raised in proposed findings of fact and conclusions of law in order to be preserved for a post-trial motion. *See* Pa.R.C.P. 227.1(b)(1). Thus, proposed findings of fact and conclusions of law are pre-requisites, not substitutes, for post-trial motions. Accordingly, we conclude that Appellant failed to preserve his weight of the evidence claim for appellate review.[15]

In sum, we hold that a party is not entitled to a jury trial under the Pennsylvania Whistleblower Law. We conclude that any alleged error by the trial court in denying Appellant's motion to compel was harmless. We also conclude that the trial court's verdict was sufficient under Pennsylvania Rule of Civil Procedure 1038(b). Finally, we conclude that Appellant has waived his claim that the verdict was against the weight of the evidence. Ac-

---

14. Even if the trial court were required to make findings of fact and conclusions of law, it made adequate findings and conclusions to enter a verdict in favor of Western Psych. It found that Western Psych had proved its affirmative defense. Any other findings would have been superfluous.

15. Even if we were to consider the merits of Appellant's weight of the evidence claim, we would conclude that Appellant is not entitled to relief on this claim. "We will respect a trial court's findings with regard to the credi-

bility and weight of the evidence [after a bench trial] unless the appellant can show that the court's determination was manifestly erroneous, arbitrary and capricious[,] or flagrantly contrary to the evidence." *J.J. DeLuca Co., Inc. v. Toll Naval Assocs.*, 56 A.3d 402, 410 (Pa.Super.2012) (internal quotation marks and citation omitted). In this case the trial court's verdict was not "manifestly erroneous, arbitrary and capricious[,] or flagrantly contrary to the evidence." *Id.*

cordingly, we affirm the judgment entered in favor of Western Psych.

Judgment affirmed.