J-S65018-17

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| NLG, LLC | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| 9197-5904 QUEBEC, INC., | : | |
| | : | |
| Appellant | : | No. 2400 EDA 2016 |

Appeal from the Judgment Entered January 10, 2017
In the Court of Common Pleas of Philadelphia County Civil Division at
No(s):  August Term 2012 No. 2514

BEFORE:  OLSON, J., OTT, J., and MUSMANNO, J.

MEMORANDUM BY OLSON, J.:              **FILED DECEMBER 29, 2017**

Appellant, 9197-5904 Quebec, Inc., appeals from the judgment entered on January 10, 2017 in the Civil Division of the Court of Common Pleas of Philadelphia County.  Appellant challenges a punitive damage award entered in favor of NLG, LLC (NLG), claiming that the trial court erred in permitting the award in the context of this Dragonetti action, brought under 42 Pa.C.S.A. §§ 8351-8352, since Appellant's actions were taken with the assistance of counsel.  We affirm.

The trial court aptly summarized the factual background in this case as follows.

> On August 24, 2012, [NLG] commenced the instant action by way of a complaint against Darius A. Marzec ("Marzec"); the Marzec Law Firm, P.C. (the "Marzec firm"); Guy A. Donatelli ("Donatelli"); Lamb McErlane, P.C. (the "Lamb firm"); and [Appellant].  After a series of pleadings, NLG filed its second amended complaint on February 28, 2013, asserting a cause of

action against all the [d]efendants for wrongful use of civil proceedings pursuant to 42 Pa.C.S. § 8351.

In terms of the parties, NLG averred it is a limited liability company that on or after May 17, 2007, was operated, but not owned, by Christopher Kosachuk ("Kosachuk"). NLG further averred Marzec was a Pennsylvania licensed attorney and the owner or an employee of the Marzec firm located at 225 Broadway, Suite 3000, New York, New York, 10007. Donatelli was a Pennsylvania licensed attorney and an agent or employee of the Lamb firm located at 24 E. Market St., West Chester, PA 19381; and [Appellant] was a corporation that acted through its officer Raymond Houle ("Houle").

In terms of material facts upon which its cause of action was based, NLG averred as numbered in its complaint:

6. On February 22, 2007[,] judgment was entered in the Supreme Court of New York, New York County in favor of Eugenia Lorret [("Lorret")] and against Kosachuk as a result of an action filed against Kosachuk. However, no judgment was entered against NLG….

7. On December 15, 2009, Lorret assigned the judgment to ... [Appellant], which was formed solely for the purpose of holding said judgment.

8. On January 4, 2012, [Appellant], by Marzec and [the Marzec] firm, commenced an action on behalf of Lorret and against NLG … in the Court of Common Pleas of Chester County, No. 2012-00057, to domesticate the judgment pursuant to the Uniform Enforcement of Foreign Judgments Act, 42 Pa.C.S.A. §4306 ("UEFJA").

9. As part of [Appellant's] initial filing, it presented an affidavit of its officer … Houle, reciting the judgment of $105,375.78, plus interest and costs and requested entry of the judgment against the "defendant**s**", and referenced "judgment debtor**s**".

10. [Appellant's] officer Houle and Marzec knew, or were reckless in not knowing that the judgment had been entered in New York in favor of Lorret and against Kosachuk only.

\* \* \*

- 2 -

12. Because the documents facially complied with the requirements of the UEFJA, the judgment was wrongfully recorded against both Kosachuk and NLG.

13. On February 15, 2012, the caption was amended to reflect [Appellant] as the judgment creditor and a Charging Order was granted giving all economic and management rights in NLG to [Appellant] pursuant to 15 Pa.C.S.A. § 8563.

14. No direct or proper notice of the Pennsylvania proceedings was ever provided to NLG or Kosachuk, even though [Appellant] and Marzec and [the Marzec] firm actually knew of addresses where they could be served with notice.

* * *

16. Notice of the Pennsylvania proceedings was first learned by Kosachuk when the Charging Order was first used by [Appellant] in Florida to divest NLG of a right to collect debt[s] in Florida.

17. The affidavit prepared by Marzec and [the Marzec] firm for [Appellant] was intended to, and did mislead the [c]ourt about the nature of the judgment.

18. Even though Kosachuk had no ownership interest in NLG at that time, nor had a proper judgment against it, [Appellant], nevertheless seized the assets of NLG in Florida, which had a value far in excess of the value of the judgment.

19. As a result of the foregoing, the [Chester County] court, on May 1, 2012, vacated the foreign judgment and vacated the Charging Order. Although a request for reconsideration of that Order was made, it was denied by the [c]ourt and no appeal has been taken therefrom.

20. At all times material hereto … Donatelli and the Lamb … firm aided and abetted co-defendants, and acted as joint venturers in obtaining and attempting to retain the false and fraudulent judgment against [NLG], referenced above, in … Pennsylvania. While having actual knowledge that an active judgment did not exist in New York against [NLG] and that the judgment entered against [NLG] in Chester

county was fraudulently entered … Donatelli and the Lamb firm filed an [a]nswer on behalf of [Appellant] to [NLG's] motion to vacate the foreign judgment, on or about March 16, 2012, stating:

[Appellant] Opposes the Motion of defendants Christopher Kosachuk **and NLG** to Vacate Foreign Judgment … with prejudice. (Emphasis added)

21. At all times material hereto, … Donatelli and [the] Lamb [firm] knew or should have known of the fraudulent acts of co-defendants, but nevertheless continued to assist them in their improper and illegal activities attempting to enforce a non-existent judgment against [NLG].

22. All defendants actually knew that the only purpose in instituting or continuing an action against NLG was solely for the purpose of attempting to obtain funds from [NLG], even though they actually knew that [NLG] could not be liable to them upon any valid judgment, such being for an improper purpose when they knew that the judgment did not properly exist against [NLG].

On November 20, 2013, Donatelli and the Lamb firm (collectively, the "Lamb Defendants") filed an answer and new matter to NLG's Second Amended Complaint. Therein, the Lamb Defendants asserted Marzec and the Marzec firm (collectively, the "Marzec Defendants") "authenticated the New York judgment to the Chester County Court of Common Pleas." Moreover, the Lamb Defendants asserted they "did not institute or continue an action against [NLG] and never attempted to obtain funds from [NLG]." To the contrary, the Lamb Defendants asserted that they "made it clear [to the Chester County Court] on a number of occasions [after they got involved as local Chester County counsel for Appellant] that [Appellant] was not proceeding against [NLG] and that no judgment existed against [NLG]."

In support of these assertions, in new matter the Lamb Defendants averred they "did not procure or commence [the] action against NLG in the Chester County Court of Common Pleas" and "did not file any document with the Court of Common Pleas of Chester County on behalf of [Appellant] until February 27, 2012" as later-retained local Chester County counsel. Moreover, the Lamb Defendants averred they "took no actions relating to any judgment NLG purports to have in Florida or New York."

On December 1, 2013, [Appellant] filed an answer and new matter to NLG's Second Amended Complaint. Therein, [Appellant] did not deny that it was the Marzec Defendants that commenced an action on its behalf in Chester County, which included an affidavit from Houle that stated judgment has been entered in New York against "defendant**s**" who were named as Kosachuk and NJG, but stated the affidavit later only identified Kosachuk as the judgment debtor. [Appellant] further asserted "it did not intend to mislead the [Chester County] court about the nature of the judgment." Rather, [Appellant] averred "[t]he purpose of action in the Chester County Court of Common Pleas was to domesticate a valid judgment entered in New York against Kosachuk so that [Appellant] … could obtain a charging order encumbering Kosachuk's personal interests located in Pennsylvania" and "[n]o action whatsoever was taken against NLG [by Appellant] in the Chester County proceedings due to its inclusion on the caption."

However, in the May 1, 2012 order vacating the charging order and the judgment entered against NLG, the Chester County court per the Honorable Edward Griffin explained that "[t]he [a]ffidavit, signed by Houle and prepared by his counsel … Marzec, [had in fact] misled [the] court about the nature of the [j]udgment" and "Houle knew or should have known that the [j]udgment had been entered in New York against Kosachuk only." Judge Griffith further explained that in captioning the case against both Kosachuk and NLG and including in the affidavit that the judgment in New York was "entered against the defendant**s**[,]" "[t]he Prothonotary, upon receiving documents that facially complied with the requirements of UEFJA and that sought entry of a judgment against both Kosachuk and NLG recorded the [j]udgment against both Kosachuk and NLG."

On March 2, 2016, the above-captioned matter proceeded to a four-day trial before th[e trial c]ourt and a jury. Having had a number of counsel previously withdraw, [Appellant] did not participate in the trial of this action. At the trial, the [c]ourt entered a nonsuit in favor of the Lamb Defendants and a directed verdict in favor of NLG and against [Appellant] in the amount of $27,795.00. Thereafter, the issue of whether NLG was entitled to recover punitive damages from [Appellant] went to the jury, with the jury determining it was so entitled and entering an award of $8,000,000.00.

On March 9, 2016, counsel for NLG filed a motion for post-trial relief, which sought to have the nonsuit removed and a new trial granted in terms of the Lamb Defendants. At the same time[,] counsel for NLG also filed a motion to withdraw his appearance. Subsequently, the [c]ourt entered an order that set a briefing schedule and an order that allowed NLG's counsel to withdraw. The order allowing NLG's counsel to withdraw his appearance also stayed the proceedings for 60 days to allow NLG to retain new counsel.

On March 18, 2016, new counsel for [Appellant]—who had been unrepresented since January 2015 and did not participate in the trial—entered his appearance and filed a motion for post-trial relief. Therein, [Appellant] asserted "[o]n March 8, 2016, the [c]ourt entered a directed verdict in favor of … Kosachu[]k, who is not a party, in the amount of $27,795.00 against [Appellant]." [Appellant] argued "[a]s … Kosachu[]k was never a named party to this action, any award entered in his favor must be stricken and set aside.

[Appellant] also argued "the punitive damages award should be stricken or reduced, or a new trial on the same be ordered …." Specifically, [Appellant] argued the $8,000,000.00 award:

> should shock the "[c]ourt's conscience because:
>
> a. The amount of punitive damages bears no reasonable relation to the tortious conduct at issue;
>
> b. The nature of [NLG's] alleged harm does not warrant the amount of punitive damages awarded;
>
> c. The extent of [NLG's] alleged harm does not warrant the amount of punitive damages awarded;
>
> d. There is no evidence in this record of the supposed wealth of [Appellant] that would justify this award of punitive damages;
>
> e. There is no evidence of record that this award of punitive damages will have any deterrent effect on [Appellant].

As the proceedings had been stayed to allow NLG to obtain new counsel, on May 16, 2016, the [c]ourt entered an order modifying the briefing schedule for NLG's post-trial motion as

- 6 -

well as setting a briefing schedule for [Appellant's] post-trial motion, with movant briefs being due June 7, 2016 and respondent briefs being due June 27, 2016.

On June 7, 2016, [Appellant] filed a brief in support of its motion. Therein, [Appellant] again (wrongfully) asserted "[t]he [c]ourt entered a directed verdict in favor of … Kosachu[]k, who is not a party, in the amount of $276,795.00 against [Appellant,]" and "any award 'in favor of Kosachu[]k is *ultra vires* and should be stricken.' [Appellant] also added for the first time that—the actual directed verdict in favor of NLG—and "against [Appellant] should be stricken on the merits, as well." Here, despite not having participated in the trial, [Appellant] argued the evidence produced at trial failed to establish a cause of action against it for wrongful use of civil proceedings pursuant to 42 Pa. C.S. § 8351.

In terms of the $8,000,000.00 punitive damages award, [Appellant] argued it was unconstitutional and unreasonable, and the [c]ourt should strike it "altogether, or grant a remitter, or order a new trial on punitive damages." Regarding constitutionality, [Appellant] pointed to cases that provided "single-digit multipliers, particularly in the 4:1 range, can usually survive constitutional scrutiny" and noted the punitive damages award in this case "was nearly *three hundred times* the compensatory award." Regarding punitive damages generally, and again without having been present at trial, [Appellant] argued the award in this case should shock the [c]ourt's sense of justice because the factors considered in awarding these damages such as the character of the act, the nature and the extent of the harm, and the wealth of the defendant did not support such an award.

NLG never obtained new counsel to brief its motion or respond to [Appellant's] motion. Nevertheless, on June 27, 2016, the Lamb Defendants argued the motion should be denied because, *inter alia*, NLG failed to comply with the briefing orders and "failed to identify any evidence which could have imposed damages on the Lamb Defendants" as "[a]ll of [NLG's] evidence established that [its] claims arose **before** the Lamb Defendants were counsel in the [u]nderlying Chester County [a]ction, and there was no evidence that the Lamb Defendants had anything to do with the entry of the [c]harging [o]rder or any event outside of Pennsylvania."

- 7 -

On June 28, 2016, th[e trial c]ourt entered an order denying NLG's post-trial motion challenging the nonsuit in favor of the Lamb Defendants. That same day, the [c]ourt also entered an order granting in part and denying in part [Appellant's] post-trial motion challenging the punitive damages award against it. Specifically, the [o]rder provided:

- No award was entered in favor of … Kosachu[]k, individually. Therefore, there is no award in favor of … Kosachu[]k to be set aside.

- A remitter is **GRANTED** as to the $8,000,000.00 in punitive damages assessed against … [Appellant] … by the jury. The [c]ourt reduces the punitive damages in this case to $83,385, for a total of $111,180 in favor of … NLG … and against … [Appellant]….

- The Motion for Post-Trial Relief of … [Appellant] … is **DENIED** in another respect.

On July 28, 2016, [Appellant] filed a notice of appeal. Thereafter, the [c]ourt ordered it to file a Pennsylvania Rule of Appellate Procedure 1925(b) statement on or before August 23, 2016, and on August 22, 2016, [Appellant] filed its statement.

In its 1925(b) statement [Appellant] complain[ed]:

a. Th[e trial c]ourt erred by not striking the punitive damages award in this case because [NLG's] conduct did not warrant an award of punitive damages.

b. The directed verdict against [Appellant] was improper because there was no evidence that [Appellant] "initiated civil proceedings" against NLG; and because there was no evidence that [Appellant] acted without probable cause, particularly in light of the fact that [Appellant's] actions were done in "reliance upon the advice of counsel," see, 42 Pa.C.S.A. § 8352(2) and that very same counsel was granted a non-suit.

Trial Court Opinion, 10/3/16, 1-8.

Appellant raises the following issue on appeal.

> Did the trial court err by allowing a punitive damages award against [Appellant] where its actions were taken through counsel?

Appellant's Brief at 4.

We are unable to agree with Appellant's contention on appeal that the directed verdict in favor of trial counsel extinguished Appellant's liability for punitive damages since Appellant's actions were taken with the assistance of counsel and, therefore, fell within the safe harbor set forth in 42 Pa.C.S.A. § 8352(2) (a person has probable cause to procure, initiate, or continue civil proceedings against another if his reasonable belief in the facts that support the claim relies on the advice of counsel sought in good faith after full disclosure). There are several reasons for this conclusion.

As a preliminary matter, Appellant failed to include this precise issue in a post-trial motion filed pursuant to Pa.R.Civ.P. 227.1. Accordingly, Appellant waived appellate review of this claim. **_Bensinger v. University of Pittsburgh Medical Center_**, 98 A.3d 672, 682 (Pa. Super. 2014).

Secondly, the trial court acted within its discretion in concluding that the directed verdict entered in favor of trial counsel did not extinguish Appellant's liability for punitive damages. Here, the court entered a directed verdict in favor of trial counsel because it found that NLG's claims arose before counsel became involved in this matter on behalf of Appellant. **_See_** Trial Court Opinion, 10/3/16, at 13-14. NLG's claims against Appellant, however, arose from Appellant's initiation of civil proceedings in the absence of probable cause prior to trial counsel's involvement. Appellant has not

challenged these determinations. Because the factual basis for compensatory and punitive damage awards established against Appellant differed materially from the grounds alleged against trial counsel, we reject the claim that the directed verdict in favor of trial counsel necessarily extinguished the punitive damage award against Appellant. For each of the foregoing these reasons, we affirm the trial court's entry of judgment against Appellant.

Affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 12/29/17