# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

| | | |
|---|---|---|
| Paul Zenak | : | |
| | : | |
| v. | : | No. 1194 C.D. 2014 |
| | : | |
| Police Athletic League of | : | |
| Philadelphia, City of Philadelphia | : | |
| | : | |
| Appeal of: City of Philadelphia | : | |
| | : | |
| Officer Paul Zenak, | : | |
| | : | |
| Appellant | : | |
| | : | |
| v. | : | No. 1801 C.D. 2014 |
| | : | |
| Police Athletic League of Philadelphia | : | Argued: October 5, 2015 |

BEFORE:    HONORABLE RENÉE COHN JUBELIRER, Judge
              HONORABLE PATRICIA A. McCULLOUGH, Judge
              HONORABLE JAMES GARDNER COLINS, Senior Judge

**OPINION BY**
**JUDGE COHN JUBELIRER**             **FILED: January 6, 2016**

Officer Paul Zenak, a Philadelphia police officer who previously worked at a Police Athletic League[1] (PAL) youth center, commenced an action in the Court of Common Pleas of Philadelphia County (trial court) against PAL, the City of Philadelphia (City), J. Bailey Builders, LLC (Bailey), and the Wissinoming United

---

[1] The Philadelphia Athletic League is a unit of the Philadelphia Police Department, which provides after-school activities to underprivileged youth in the Philadelphia area. (Trial Tr. at 125, 127, February 18, 2014, R.R. at 241a, 243a.)

Methodist Church (Church).[2]  Officer Zenak's action asserted claims arising under, *inter alia*, the Pennsylvania Whistleblower Law,[3] the Philadelphia False Claims Ordinance (False Claims Ordinance),[4] and a negligence theory.  Before trial, the City filed a "Motion in Limine to Bifurcate the Trial and Deny Plaintiff a Jury Trial on His Whistleblower and False Claims Counts" (Motion to Bifurcate). (Motion to Bifurcate, R.R. at 2567a-68a.)  The City's Motion to Bifurcate was denied without prejudice and the City was directed to raise it with the trial judge. (Tr. Ct. Order, December 16, 2013, R.R. at 2574a.)  Thereafter, the City filed a Second Motion to Bifurcate with the trial court on January 24, 2014 requesting that Officer Zenak be denied a jury trial on his whistleblower and false claims counts. (Second Motion to Bifurcate, R.R. at 2575a-77a.)

An eight day jury trial commenced on February 18, 2014.[5]  At the beginning of the trial, the court disposed of several of the City's pre-trial motions, including

---

[2] Prior to trial, Officer Zenak filed praecipes to settle and discontinue any claim against PAL and the Church.  Moreover, Officer Zenak was unable to serve Bailey with the complaint and did not proceed against that party at trial.

[3] Act of December 12, 1986, P.L. 1559, as amended, 43 P.S. §§ 1421-1428.

[4] Phila. Code §§ 19-3601-19-3606.

[5] Several witnesses testified at trial.  Lieutenant Bryan Anthony testified on February 18, 2014 and February 19, 2014 and the transcript of his testimony is found at pages 240a-341a and 351a-433a of the reproduced record. Sergeant Eric Ervin testified on February 19, 2014 and the transcript of his testimony is found at pages 434a-575a of the reproduced record.  Police Commissioner Charles H. Ramsey, Immediate Past Chair of PAL Sylvia Nisenbaum, Deputy Police Commissioner Charlotte Council and Certified Industrial Hygienist Expert Richard Levin testified on February 20, 2014.  The transcript of their testimony is found at pages 584a-638a, 640a-729a, 730a-42a, and 742a-96a of the reproduced record, respectively.  Richard Levin continued his testimony on February 21, 2014 and the transcript of his testimony may be found

*(Continued…)*

the Second Motion to Bifurcate, which the trial court summarily denied without argument by the parties. (Trial Tr. at 5, February 18, 2014, R.R. at 121a.) At the close of Officer Zenak's case-in-chief, the trial court granted the City's motion for nonsuit with respect to the False Claims Ordinance and negligence counts, but denied the City's motion for nonsuit with respect to the whistleblower count. Because the trial court believed that the City had not formally requested bifurcation on the record before the trial commenced and the jury had already heard Officer Zenak's case-in-chief, the trial court rejected the City's argument that Officer Zenak's whistleblower claim should not be submitted to the jury and proceeded to allow the jury to hear the remainder of the case. (Trial Tr. at 6-17, February 26, 2014, R.R. at 1514a-25a.)

On February 27, 2014, the jury issued a verdict in Officer Zenak's favor on the whistleblower count. Thereafter, both Officer Zenak and the City filed post-trial motions, which the trial court denied by three separate Orders dated June 24, 2014. In these consolidated appeals, the City and Officer Zenak now appeal from the trial court's Orders. On appeal, the City and Officer Zenak argue that the trial

at pages 837a-86a. Police Officer Tony D'Aulerio, PAL Administrative Assistant Laura Kelly, and Former PAL employee Joanne Huczko also testified on February 21, 2014 and the transcript of their testimony is found at pages 889a-915a, 916a-59a, and 960a-86a of the reproduced record, respectively. Police Officer Steven Brennan and Officer Zenak's wife, Theresa Zenak, testified on February 24, 2014 and the transcript of their testimony is found at pages 1027a-80a and 1081a-90a of the reproduced record, respectively. Officer Zenak testified on February 24 and 25, 2014 and the transcript of his testimony is found at pages 1093a-1246a and 1261a-1331a of the reproduced record. Retired Police Captain Albert L. DiGiacomo and Police Expert Ronald Traenkle testified on February 25, 2014 and the transcript of their testimony is found at pages 1335a-88a and 1397a-1432a of the reproduced record, respectively. Lieutenant Kevin Rice and Sergeant Michael Faust testified on February 26, 2014 and the transcript of their testimony is found at pages 1559a-1715a and 1716a-32a of the reproduced record, respectively.

3

court erred for several reasons in denying the post-trial motions. Upon review, we affirm in part, reverse in part, and remand this matter for further proceedings.

## I. WHISTLEBLOWER LAW

In his Second Amended Complaint, Officer Zenak alleged that the City unlawfully retaliated against him, in violation of the Whistleblower Law, for making a good faith report regarding the improper "handling of asbestos removal" at his place of employment and "possible misuse of public and private funds." (Second Amended Complaint ¶¶ 1-3, R.R. at 2468a.) Pursuant to Section 2 of the Whistleblower Law, a "Whistleblower" is defined as "[a] person who witnesses or has evidence of wrongdoing or waste while employed and *who makes a good faith report* of the wrongdoing or waste, verbally or in writing, to one of the person's superiors, to an agent of the employer or to an appropriate authority." 43 P.S. § 1422 (emphasis added). Further, a "Good faith report" is defined as "[a] report of conduct defined in this act as wrongdoing or waste which is made without malice or consideration of personal benefit and which the person making the report has reasonable cause to believe is true." Id. Section 3 of the Whistleblower Law provides, in relevant part, that:

> [n]o employer may discharge, threaten or otherwise discriminate or retaliate against an employee regarding the employee's compensation, terms, conditions, location or privileges of employment because the employee or a person acting on behalf of the employee makes a good faith report or is about to report, verbally or in writing, to the employer or appropriate authority an instance of wrongdoing or waste by a public body or an instance of waste by any other employer as defined in this act.

43 P.S. § 1423(a).

Section 4(b) "sets forth the requirements that a petitioner must satisfy to make out a *prima facie* case of a violation of the Whistleblower Law." O'Rourke v. Commonwealth, 778 A.2d 1194, 1199-1200 (Pa. 2001). Section 4(b) provides:

> **(b) Necessary showing of evidence.--**An employee alleging a violation of this act must show by a preponderance of the evidence that, prior to the alleged reprisal, the employee or a person acting on behalf of the employee had reported or was about to report in good faith, verbally or in writing, an instance of wrongdoing or waste to the employer or an appropriate authority.

43 P.S. § 1424(b). Thus, "a Whistleblower Law claimant must come forward with some evidence of a connection between the report of wrongdoing and the alleged retaliatory acts." O'Rourke, 778 A.2d at 1200 (citing Golaschevsky v. Department of Environmental Protection, 720 A.2d 757, 759 (Pa. 1998)). If the requirements of Section 4(b) are satisfied, the burden shifts to the employer to prove "by a preponderance of the evidence that the action by the employer occurred for separate and legitimate reasons, which are not merely pretextual." Section 4(c) of the Whistleblower Law, 43 P.S. § 1424(c); O'Rourke, 778 A.2d at 1200.

## II. BACKGROUND

### A. RENOVATION WORK PERFORMED AT PAL YOUTH CENTER/OFFICER ZENAK'S COMPLAINTS

While employed as a Philadelphia police officer, Officer Zenak was assigned in 2008 to direct PAL's Wissinoming Center (Center). The Center was located in the basement of the Church. In August 2011, the Commanding Officer of PAL, Lieutenant Bryan Anthony (Lt. Anthony), contracted with Bailey to renovate a storage room in the Church basement. In September 2011, during

5

Bailey's renovation of the storage room, Officer Zenak approached Bailey's owner and asked him to take a look at a pipe and insulation located in the room adjacent to the storage room, known as the homework room. According to Officer Zenak, Bailey's owner "identified asbestos insulation in the homework room." (Trial Ct. Op. at 2.) Consequently, Officer Zenak shut down the Center and informed his supervisor, Sergeant Eric Ervin (Sgt. Ervin).

Thereafter, Lt. Anthony and Sgt. Ervin met with Bailey's owner at the Center to inspect the alleged asbestos.[6] As a result of the inspection, Lt. Anthony hired Bailey to remove the alleged asbestos. On September 30, 2011, Bailey removed the alleged asbestos and billed the Center for removing and "discard[ing] asbestos." (Trial Tr. at 148, February 24, 2014, R.R. at 1139a; Bailey Invoice, R.R. at 2225a.) The same day, the Philadelphia Asbestos Control Unit (Control Unit) received an anonymous tip of illegal asbestos abatement and visited the Center. The Control Unit issued a report that no asbestos was present in the Center.

On October 12, 2011, Officer Zenak observed a shop-vac, without a lid, containing grey and white debris in the homework room. Officer Zenak was concerned the debris was asbestos. Accordingly, Officer Zenak called Sgt. Ervin and immediately shut down the Center. Sgt. Ervin called Bailey and was assured that Bailey would take a look at the debris. On October 14, 2011, Officer Zenak met with Sgt. Ervin at PAL headquarters and requested air testing at the Center to determine whether the Center was safe, and also told Sgt. Ervin that he did not

---

[6] At trial, the City disputed whether there was ever actually asbestos in the Center.

6

believe Bailey was a licensed contractor for asbestos removal. In addition, Officer Zenak wrote a memo to Lt. Anthony on October 17, 2011, expressing his concern that he had been exposed to asbestos at the Center and met with Lt. Anthony on October 18, 2011, to inform him that he did not believe Bailey was licensed. Subsequently, air testing was performed. The October 31, 2011 air testing detected "[n]o suspect asbestos fibers." (Asbestos Testing Report, R.R. at 2227a.) Following the air testing, the Center reopened on November 7, 2011. Although Officer Zenak was informed that no asbestos was detected, he requested a copy of the report from his supervisors, but did not receive it. On March 8 and March 22, 2012, Officer Zenak wrote memos to Lt. Anthony requesting the air testing report and Bailey's asbestos license. In March 2012, PAL's Board President learned that Officer Zenak was concerned that he may have been exposed to asbestos at the Center. Accordingly, the Board President arranged to have another testing company test the homework room. That testing company determined that there was no asbestos in the homework room and, in early April 2012, the Board President shared both testing reports with Officer Zenak.

## B. ALLEGED RETALIATORY ACTIONS TAKEN AGAINST OFFICER ZENAK

On October 13, 2011, the day after Officer Zenak informed his superiors that he had found asbestos debris in the Center, Sgt. Ervin visited the Center to inspect the debris. Officer Zenak testified that, during this visit, Sgt. Ervin berated Officer Zenak about the general condition of the Center, specifically complaining about the Center's light fixtures and holes in the walls. (Trial Tr. at 153, February 24, 2014, R.R. at 1144a.) In response to Sgt. Ervin's complaints, Officer Zenak showed him copies of work slips that Officer Zenak submitted to have the light

fixtures and the holes fixed, to which no action had been taken. (Trial Tr. at 154, R.R. at 1145a.) When Officer Zenak met with Sgt. Ervin at PAL headquarters on October 14, 2011, Sgt. Ervin again complained to Officer Zenak about the condition of the Center. (Trial Tr. at 158, R.R. at 1149a.)

Sgt. Ervin testified that when he visited the Center on October 13, 2011, he issued Officer Zenak a counseling form, which reprimanded Officer Zenak for driving the PAL van and for failing to keep the Center clean. (Trial Tr. at 161-62, 213-14, February 19, 2014, R.R. at 507a-08a, 559a-60a; Ex. P-46, PAL Counseling Form, R.R. at 2242a.) However, Officer Zenak claimed that he never received the October 13, 2011 counseling form. (Trial Tr. at 161, February 24, 2014, R.R. at 1152a.)

In early 2012, Lieutenant Rice (Lt. Rice) took over for Sgt. Ervin as Officer Zenak's supervisor. Lt. Rice began visiting the Center frequently to inspect Officer Zenak's work: he visited the Center three times in January 2012 and visited five times in March 2012, with each visit lasting 30 minutes to an hour. Previously, when Sgt. Ervin was Officer Zenak's supervisor, Sgt. Ervin would visit the Center once per month for approximately 15 minutes per visit. When Lt. Rice visited the Center he typically filled out "Center Inspection Reports." (Trial Tr. at 62-63, February 26, 2014, R.R. at 1570a-71a.) The Center Inspection Reports indicate that Lt. Rice was concerned over the lack of organized sports leagues at the Center, the low number of youths at the Center, and that Lt. Rice warned Officer Zenak to establish an organized program for the children. (Ex. P-46, PAL Center Inspection Reports, R.R. at 2246a-52a.)

When Lt. Rice visited the Center on March 26, 2012, he issued Officer Zenak two counseling forms. The first counseling form stated that the reason for counseling was "not fulfilling your responsibility to [the Center]" and reprimanded Officer Zenak for not starting any sports leagues for the children. (Ex. D41, Philadelphia Police Department Counseling Form (3-26-12), R.R. at 2085a.) The counseling form informed Officer Zenak that it was his responsibility to establish sports leagues at the Center in order to increase the number of youths attending the Center, that he was being issued "a direct order to establish a league in [the Center], and that "failure to do so [would] lead to further disciplinary action." (Ex. D41, Philadelphia Police Department Counseling Form (3-26-12), R.R. at 2085a.) The second counseling form stated that the reason for counseling was "failure to follow orders" and reprimanded Officer Zenak for failing to submit required paperwork. (Ex. D42, Philadelphia Police Department Counseling Form (3-26-12), R.R. at 2086a.) Specifically, the counseling form stated that Officer Zenak failed to follow orders by not turning in, *inter alia*, monthly calendars for the months of November, December, and February. The counseling form also stated that "any future violation of this nature will be met with corrective action." (Ex. D42, Philadelphia Police Department Counseling Form (3-26-12), R.R. at 2086a.)

Following the counseling forms, Officer Zenak started a whiffle ball league. At trial, Officer Zenak disputed the contents of the counseling forms, claiming that it was "all a lie." (Trial Tr. at 192, February 24, 2014, R.R. at 1183a.) In particular, Officer Zenak claimed that he turned in the required paperwork, was running several sports leagues, and challenged the number of children that Lt. Rice reported seeing at the Center. (Trial Tr. at 186-92, R.R. at 1177a-83a.) Before

receiving the counseling memos, Officer Zenak regularly submitted "weekly activity logs" to Lt. Rice, which reported that a large number of youths were regularly attending the Center and were participating in sports leagues. (Trial Tr. at 160-63, February 26, 2014, R.R. at 1668a-71a.) Lt. Rice testified that he believed the numbers reported by Officer Zenak were false and that he filed the "weekly activity logs" with the intention of holding onto them in case he decided to ask Lt. Anthony to pursue disciplinary action against Officer Zenak for falsifying documents. (Trial Tr. at 166-67, R.R. at 1674a-75a.)

At trial, the parties disputed whether the counseling forms were disciplinary in nature. Philadelphia Police Commissioner Charles H. Ramsey testified that counseling is not disciplinary and that counseling memoranda are not to be placed in an employee's central personnel file at police headquarters. (Trial Tr. at 27-28, 34, 36, February 20, 2014, R.R. at 604a-05a, 611a, 613a.) In contrast, Officer Zenak's expert, Albert DiGiacomo,[7] testified that counseling forms can be used for "informal or formal discipline" and that counseling forms can be used to transfer a police officer from a special unit to a district. (Trial Tr. at 111-12, 132, February 25, 2014, R.R. at 1367a-68a, 1388a.) He also testified that, in his opinion, the March 2012 counseling forms that were issued to Officer Zenak were the "first stage of a formal discipline." (Trial Tr. at 111-12, R.R. at 1366a-67a.)

---

[7] The City filed a motion in limine before trial to preclude DiGiacomo's testimony and objected to his testimony at trial on the grounds that DiGiacomo had not been employed by the Police Department since 1999, which was before the Police Department's directive on counseling was adopted; however, the trial court denied the motion and overruled the objections.

Officer Zenak testified at trial that the March 2012 counseling memos were extremely threatening and that, until then, he had never received counseling memos in his career as a police officer. (Trial Tr. at 200, February 24, 2014, R.R. at 1191a.) Officer Zenak believed that the counseling memos indicated that "something bad was coming" and that he might be fired. (Trial Tr. at 200-01, R.R. at 1191a-92a.) Officer Zenak testified further that he believed the counseling forms were retaliation for requesting the asbestos testing reports and for requesting to see Bailey's license. (Trial Tr. at 204, R.R. at 1195a.) However, Officer Zenak also acknowledged that after he received the counseling forms he remained at the Center, his salary remained the same, and that he was not suspended or fired. (Trial Tr. at 32, 34, February 25, 2014, R.R. at 1288a, 1290a.) Officer Zenak became extremely stressed due to the counseling forms and his belief in his imminent firing, and began experiencing anxiety and panic attacks, trouble sleeping, and even believed he was having a heart attack at one point. (Trial Tr. at 209-10, February 24, 2014, R.R. at 1200a-01a.) Accordingly, Officer Zenak went on medical leave at the end of April 2012. (Trial Tr. at 213, R.R. at 1204a.)

Two days before Officer Zenak went on medical leave, the PAL Committee conducted a meeting where the participants discussed the asbestos issue at the Center. Lt. Anthony stated at this meeting that the asbestos issue started "because we had an officer who wasn't performing. He wasn't doing the things he needed to do as a PAL officer. So he tried to deflect that issue into saying that there was something wrong with [t]his center in terms of asbestos." (Ex. P-129, Audio Transcription at 19, R.R. at 2435a.) Lt. Anthony also explained that the air was tested, the testing companies "certified that there was never any asbestos in the

11

building," and that the testing was "kind of a waste of time." (Ex. P-129, Audio Transcription at 21, R.R. at 2435a.) Following this discussion, one of the PAL Committee members asked, "I guess it's really not the business of this committee to discuss . . . why the guy wasn't fired or now you have grounds to fire him, because it all started with him not doing his duties; right?" (Ex. P-129, Audio Transcription at 26, R.R. at 2437a.) Another PAL Committee member pointed out that was a police and personnel issue and Lt. Anthony responded, "[w]e're dealing—we're dealing with that. We're working through that." (Ex. P-129, Audio Transcription at 27, R.R. at 2437a.) There was no evidence presented at trial that Officer Zenak was aware of the PAL Committee meeting before he went on medical leave.

While he was out on medical leave, Officer Zenak earned his full salary and medical benefits. Officer Zenak did not return from leave until August 2013, at which time he was placed on restricted duty status based solely on a physician's evaluation of his then existing condition. Based on that assessment, Officer Zenak was assigned to court attendance duty.

## C. JURY VERDICT/POST TRIAL MOTIONS

The jury found in favor of Officer Zenak on February 27, 2014 on the whistleblower claim and granted him the following relief: (1) reinstatement to his position at PAL; (2) reimbursement of accrued leave; (3) reimbursement of medical costs; and (4) award of reasonable attorney's fees and costs. The trial court granted the City's motion for judgment notwithstanding the verdict (JNOV) on Officer Zenak's reinstatement to PAL, based on the terms of Officer Zenak's

earlier settlement with PAL. On March 13, 2014, the trial court held an assessment of damages hearing in order to mold the verdict. During this hearing, Officer Zenak submitted a request for attorney's fees in the amount of $212,140.00 and a request for litigation costs in the amount of $36,197.05. (Trial Tr. at 33, March 13, 2014, R.R. at 1977a.) The City objected to the amount of attorney's fees requested as unreasonable and argued that a more fair amount would be $105,227.02. (Trial Tr. at 40, R.R. at 1984a.) The trial court awarded $159,183.51 in attorney's fees and $36,000 in costs to Officer Zenak. (Trial Ct. Order, March 13, 2014.)

The City filed a post-trial motion on March 7, 2014 and a supplemental post-trial motion on March 21, 2014. In its post-trial motions, the City requested that the trial court enter JNOV in favor of the City on Officer Zenak's whistleblower claim because Officer Zenak did not meet his burden or order a new trial on liability because the trial court erroneously submitted the whistleblower claim to the jury. The City also requested that the trial court mold the verdict and grant JNOV in favor of the City on the issue of damages and attorney's fees and costs.

Officer Zenak filed a post-trial motion on March 21, 2014. In his post-trial motion, Officer Zenak sought a new trial on the basis that the trial court erred in entering a nonsuit in favor of the City on the False Claims Ordinance and negligence claims, and because the trial court erred in barring Officer Zenak from seeking compensatory damages under the Whistleblower Law.

13

The trial court denied the post-trial motions in three separate Orders dated June 24, 2014.[8] In an opinion in support of its Orders, the trial court first determined that Officer Zenak's "testimony at trial was sufficient to support the verdict finding that [he] made a good faith report of either wrongdoing or waste." (Trial Ct. Op. at 8.) Next, the trial court determined that circumstantial evidence demonstrated that Officer Zenak's supervisors retaliated or took adverse action against him by issuing the counseling forms. The trial court concluded that Officer Zenak "established that he had been a Philadelphia police officer for more than twenty years and had never received a single negative performance evaluation prior to complaining about the renovations at the . . . Center." (Trial Ct. Op. at 11.) The trial court also found critical Lt. Anthony's recorded statements at the PAL Committee meeting that occurred two days before Officer Zenak went out on sick leave. Through this evidence the trial court opined that Officer Zenak "presented a circumstantial case that his supervisors, and specifically Lt. Anthony, retaliated against him and that he suffered an adverse employment action for reporting what he believed was an improper asbestos abatement project." (Trial Ct. Op. at 11.) The trial court stated that "[t]he [j]ury was free to believe or disbelieve this evidence as it saw fit." (Trial Ct. Op. at 11.) Accordingly, the trial court concluded that it did not err in not setting aside the verdict and that the jury verdict was not against the weight of the evidence.

The trial court also stated that it permitted a jury trial for the whistleblower claim due to the peculiar nature of the litigation. After granting nonsuit for the negligence and False Claims Ordinance claims, the trial court, which had not acted

---

[8] Judgment on the verdict was entered in the trial court on September 4, 2014.

14

as a factfinder up to that point, believed it was faced with the difficult choice of declaring a mistrial or allowing the jury to resolve the whistleblower claim. Determining that "[d]eclaring a mistrial would not have been in the best interest of judicial economy," and "[t]he least complicated method for resolution . . . was to allow the [j]ury to resolve the whistleblower aspects of the case," the trial court allowed the jury to hear the whistleblower claim. (Trial Ct. Op. at 14.) The trial court stated that it "held a post-trial hearing to mold the verdict accordingly." (Trial Ct. Op. at 14.)

The trial court further determined that, because Officer Zenak prevailed on his whistleblower claim, he was entitled to damages under the Whistleblower Law and that the evidence presented at trial supported the damage award. With respect to the City's challenge to the amount of attorney's fees and costs awarded, the trial court pointed out that it "held an assessment of damages hearing" and awarded damages accordingly. (Trial Ct. Op. at 20.)

With respect to Officer Zenak's post-trial motion, the trial court concluded that Officer Zenak's negligence claim was completely devoid of merit and that it correctly granted nonsuit. Specifically, the trial court concluded that Officer Zenak never established that there was asbestos in the building, that he was exposed to asbestos, or that he suffered injury based on the alleged exposure. (Trial Ct. Op. at 21.) In addition, the trial court determined that Officer Zenak's negligence claim against his employer, the City, was barred by Section 303(a) of the Pennsylvania

15

Workers' Compensation Act[9] (WC Act). Finally, the trial court concluded that it correctly entered nonsuit on Officer Zenak's False Claims Ordinance claim because he did not show compliance with the requirements for bringing a claim under the Ordinance and that the City was immune from suit under the ordinance.

## III. CONSOLIDATED APPEALS TO THIS COURT

The City raises the following issues in its appeal:

1. Whether the trial court erred in denying the City's motion for a new trial on the whistleblower claim, when the trial court committed clear error in submitting the whistleblower claim to the jury, there was no right to a jury trial for the whistleblower claim, and the trial court had no discretion in submitting the claim to a jury;

2. Whether the trial court erred in denying the City's motion for JNOV on Officer Zenak's whistleblower claim when, as a matter of law, Officer Zenak did not suffer an adverse employment action necessary to sustain such a claim;

3. Alternatively, whether the trial court erred in denying the City's motion for a new trial because the verdict is against the weight of the evidence; and

4. Whether the trial court abused its discretion in awarding attorney's fees and costs to Officer Zenak when the record demonstrates that the trial court did not analyze the fees and costs to determine whether they were reasonable.

Officer Zenak raises the following issues in his appeal:

---

[9] Act of June 2, 1915, P.L. 736, as amended, 77 P.S. § 481(a). Section 303(a) provides that "[t]he liability of an employer under this act shall be exclusive and in place of any and all other liability to such employes . . . entitled to damages in any action at law or otherwise on account of any injury or death." Id.

16

1. Whether the trial court erred in granting the City's motion for nonsuit on Officer Zenak's negligence claim; and

2. Whether the trial court erred in granting the City's motion for nonsuit on Officer Zenak's False Claims Ordinance claim.

In the interest of clarity, we shall first address the issues raised by Officer Zenak.

## A. OFFICER ZENAK'S APPEAL

### 1. Whether the trial court erred in granting the City's motion for nonsuit on Officer Zenak's negligence claim.

Officer Zenak argues that the trial court did not apply the correct standard in entering nonsuit on the negligence claim. Officer Zenak asserts that his asbestos expert testified that the City assumed a duty to legally and safely remove the asbestos from the Center and that the City breached its duty by hiring Bailey, who was not licensed to remove asbestos, and by informing Officer Zenak that the air testing demonstrated that the air in the Center was safe to breathe. At trial, Officer Zenak's asbestos expert testified that the methodology used by the testing companies was incorrect and that, therefore, the air was unsafe to breathe. Officer Zenak contends that, although he did not demonstrate that he was physically injured by the asbestos, he testified about the emotional and physical stress caused by his exposure to asbestos. Officer Zenak argues that there is more than sufficient evidence to submit Officer Zenak's negligence claim to the jury.

Officer Zenak argues further that the trial court erred in concluding that his negligence claim was barred by the WC Act. In Shick v. Shirey, 716 A.2d 1231

17

(Pa. 1998), the Supreme Court recognized that an employee may sue an employer for wrongful discharge if the claim stems from the employee's filing of a workers' compensation claim. Officer Zenak contends that his negligence claim is premised on the City's retaliatory actions and is, accordingly, not barred by the WC Act. Officer Zenak asserts that, under the trial court's reasoning, the WC Act would swallow up the entirety of employment law.

The trial court correctly found that Officer Zenak did not demonstrate that there was asbestos in the Center or that he was exposed to asbestos. Specifically, there was no evidence of asbestos in the air, and Officer Zenak testified that he has never been diagnosed with any asbestos related disease such as pleural plaque, lung cancer, and mesothelioma, and the chest x-ray taken in May 2012 showed that his lungs were normal. (Trial Tr. at 36-37, February 25, 2014, R.R. at 1292a-93a.) Our Supreme Court has held that in asbestos related litigation, where the plaintiff is unable to demonstrate a sufficient physical injury warranting damages, "[any] resultant emotional distress damages are likewise not recoverable." Simmons v. Pacor, Inc., 674 A.2d 232, 238 (Pa. 1996). Thus, because Officer Zenak did not demonstrate any physical injury resulting from asbestos exposure, any damages for emotional distress are not recoverable.

The trial court was also correct that Officer Zenak's negligence action was barred by the WC Act. Section 303(a) of the WC Act states that:

> The liability of an employer under this act shall be exclusive and in place of any and all other liability to such employes, his legal representative, husband or wife, parents, dependents, next of kin or anyone otherwise entitled to damages in any action at law or

18

otherwise on account of any injury or death . . . or occupational disease . . .

77 P.S. § 481. In <u>Shick</u>, relied upon by Officer Zenak to argue that his negligence claim is permitted in spite of the WC Act, our Supreme Court held that "a cause of action exists under Pennsylvania law for wrongful discharge of an employee who files a claim for workers' compensation benefits." <u>Shick</u>, 716 A.2d at 1238. However, in that same opinion, our Supreme Court also stated that the WC "Act is the exclusive means for obtaining compensation for *injuries* which has been substituted for common law tort actions between employees and employers" and that the WC "Act restricts the remedies available to an employee for *injuries* sustained in the course of employment and closes to the employee any recourse against the employer at common law for negligence." <u>Id.</u> at 1237 (emphasis added). Thus, the trial court did not err by determining that Officer Zenak's negligence claim to recover for injuries is barred by the WC Act.

Accordingly, the trial court did not err by granting the City's motion for nonsuit on Officer Zenak's negligence claim.

### 2. Whether the trial court erred in granting the City's motion for nonsuit on Officer Zenak's False Claims Ordinance claim.

Officer Zenak argues that the trial court erred in granting nonsuit on the False Claims Ordinance claim because he suffered damages as a result of his attempts to report the misuse of City funds. Officer Zenak contends that, in order to initiate a retaliation suit under the False Claims Ordinance, a plaintiff is not required to actually initiate a suit under the False Claims Ordinance, but need only have taken some act in furtherance of a False Claims Ordinance action such as an

19

investigation, testimony, or other assistance. Here, because Officer Zenak believed City funds were being misspent, he made a good faith report regarding the waste and mismanagement of City funds to his superiors, and there was evidence at trial that he was retaliated against for providing the report, Officer Zenak has made out a *prima facie* case of retaliation under the False Claims Ordinance. Therefore, Officer Zenak asserts, the trial court erred in granting the nonsuit and not allowing the jury to decide the False Claims Ordinance claim.

Under Chapter 19-3600 of the False Claims Ordinance, false or fraudulent requests or demands for money made to the City, where the City provides any portion of that money, are considered false claims and are, accordingly, illegal. Sections 19-3601 and 19-3602 of the Philadelphia Code, Phila. Code §§ 19-3601-3602. Pursuant to Section 19-3603, civil actions may be brought by the City solicitor or a private person to remedy violations of the False Claims Ordinance. Phila. Code § 19-3603. However, a private person wishing to bring an action must submit to the City solicitor a proposed civil complaint setting forth the alleged violations of the False Claims Ordinance. Section 19-3603(2) of the Philadelphia Code, Phila. Code § 19-3603(2). The City solicitor is authorized to investigate the allegations of the proposed civil complaint and once the investigation is completed, the City solicitor may bring a civil action or enter into an agreement with the private person who submitted the complaint "to file a civil action for the person and the City, in the name of the City." Id. The City solicitor may also "[d]ecline to commence a civil action and decline to designate the person who submitted the proposed complaint to commence a civil action." Section 19-3603(2)(b)(.3) of the Philadelphia Code, Phila. Code § 19-3603(2)(b)(.3). As determined by the trial

20

court, Officer Zenak did not present any evidence that the foregoing requirements of the False Claims Ordinance were satisfied. (Trial Ct. Op. at 23.) Moreover, Section 19-3603(3)(e) of the False Claims Ordinance provides, in relevant part, that "[t]his Chapter shall not apply to claims . . . nor to any proposed civil complaints . . . [a]gainst the federal government, the Commonwealth of Pennsylvania, the City or any officer or employee of those governmental entities acting within the scope of his or her employment." Phila. Code § 19-3603(3)(e). Under Section 19-3603(3) "this Chapter" refers to the entire False Claims Ordinance. Section 19-3603(3) specifically states that the False Claims Ordinance does not apply to any claims brought *against* the City.

Accordingly, the trial court did not err by granting the City's motion for nonsuit on Officer Zenak's False Claims Ordinance claim.

## B. CITY'S APPEAL

### 1. Whether the trial court erred in denying the City's motion for a new trial on the whistleblower claim.

The City argues that because Officer Zenak was not entitled to a jury trial on his whistleblower claim, the trial court had no discretion to try the case before a jury. The City contends that the trial court acknowledged that the whistleblower claim should never have been submitted to a jury when it granted the nonsuit for the False Claims Ordinance and negligence claims. Moreover, the City asserts that submitting the whistleblower claim to a jury was not harmless error and, had the whistleblower claim been tried by the trial court, the evidence would have supported a verdict in the City's favor. Because Officer Zenak had no right to a

21

jury trial, the City contends that the jury's verdict was merely advisory and the trial court erred by abrogating its duty to make independent findings of fact and conclusions of law.

A party requesting a new trial "must demonstrate in what way trial error caused an incorrect result." Department of General Services v. United States Mineral Products Company, 927 A.2d 717, 723 (Pa. Cmwlth. 2007), aff'd, 956 A.2d 967 (Pa. 2008). Determining whether the moving party is entitled to a new trial involves a two-step process. Id. "First, we must decide whether one or more mistakes occurred at trial" and, if so, "whether the mistake is a sufficient basis for granting a new trial." Id. The moving party must demonstrate more than harmless error; the mistake will be a sufficient basis for granting a new trial where the party demonstrates prejudice resulting from the mistake. Id.

Recently, our Superior Court, in a well-reasoned opinion, determined that there is no right to a jury trial under the Whistleblower Law. Bensinger v. University of Pittsburgh Medical Center, 98 A.3d 672, 677-79 (Pa. Super. 2014).[10] In reaching this holding the Superior Court first thoroughly reviewed the statutory language of Section 5 the Whistleblower Law,[11] governing enforcement of the law. At the time the Superior Court filed its decision in Bensinger, Section 5 provided as follows:

_____

[10] Although Bensinger was decided after the trial court denied the City's post-trial motions, in its post-trial motions the City advanced many of the same arguments and cited many of the same cases relied upon by the Superior Court in Bensinger.

[11] 43 P.S. § 1425.

22

> A court, in rendering a judgment in an action brought under this act, shall order, as the court considers appropriate, reinstatement of the employee, the payment of back wages, full reinstatement of fringe benefits and seniority rights, actual damages or any combination of these remedies. A court may also award the complainant all or a portion of the costs of litigation, including reasonable attorney fees and witness fees, if the court determines that the award is appropriate.

43 P.S. § 1425.[12] Because Section 5 "refers to the court" and "never refers to the jury," the Superior Court concluded that the Whistleblower Law did not provide a right to a jury trial. Bensinger, 98 A.3d at 677. The Superior Court determined that this conclusion was consistent with our Supreme Court's decisions Mishoe v. Erie Insurance Co., 824 A.2d 1153, 1154 (Pa. 2003) (bad faith insurance claim brought under Section 8371 of the Judicial Code, 42 Pa. C.S. § 8371), and Wertz v. Chapman Township, 741 A.2d 1272 (Pa. 1999) (action brought pursuant to the Pennsylvania Human Relations Act[13]), and its decision in Fazio v. Guardian Life Insurance Co. of America, 62 A.3d 396, 399 (Pa. Super. 2012) (action brought under Unfair Trade Practices and Consumer Protection Law[14]). In all three of these

---

[12] Section 5 was amended, effective September 2, 2014, by Section 3 of the Act of July 2, 2014, P.L. 824, and currently reads as follows:

> A court, in rendering a judgment in an action brought under this act, shall order, as the court considers appropriate, reinstatement of the employee, the payment of back wages, full reinstatement of fringe benefits and seniority rights, actual damages or any combination of these remedies. **A court shall also award the complainant all or a portion of the costs of litigation, including reasonable attorney fees and witness fees, if the complainant prevails in the civil action.**

Id. (emphasis added).

[13] Act of October 27, 1955, P.L. 744, as amended, 43 P.S. §§ 951-963.

[14] Act of December 17, 1968, P.L. 1224, as amended, 73 P.S. §§ 201-1 - 201-9.3.

23

cases, the conclusion was "that a statutory right to a jury trial does not exist under statutes with similar language to the Whistleblower Law." Bensinger, 98 A.3d at 678.

Having determined that there was no statutory right to a jury trial pursuant to the Whistleblower Law, the Superior Court next addressed whether a right to a jury trial existed under the Pennsylvania Constitution. The Superior Court determined that for a jury trial to be guaranteed under Article 1, Section 6 of the Pennsylvania Constitution,[15] it must be established that (1) "a right to jury trial would have been required in 1790, when the Pennsylvania Constitution was adopted," and (2) "the action must have a common law basis, not a statutory basis." Id. at 679 (internal quotation marks omitted).

The Superior Court initially noted that "[w]histleblower protections are relatively new in this Commonwealth" and that the first time any Pennsylvania Court "recognized that a wrongful discharge action may be cognizable was in Geary v. U.S. Steel Corp., . . . 319 A.2d 174 ([Pa.] 1974))." Bensinger, 98 A.3d at 679. The Superior Court pointed out further that "a wrongful discharge action may not be brought solely because the employer had a specific intent to harm the employee," that, generally, common law wrongful discharge actions are only available to private sector employees because it was "accepted that the Commonwealth possessed sovereign immunity," and that "[t]he Commonwealth had not waived this sovereign immunity with respect to whistleblower claims until

_____

[15] Article 1, Section 6 provides that: "[t]rial by jury shall be as heretofore, and the right thereof shall remain inviolate." Pa. Const. art. 1, § 6.

24

passage of the Whistleblower Law." Id. at 680-81. Thus, the Superior Court concluded that "it is evident that a common law cause of action equivalent to a claim under the Whistleblower Law did not exist in 1790." Id. at 681. As further support, the Superior Court recognized that the Supreme Court of New Jersey, several Pennsylvania Courts of Common Pleas, and the United States District Court for the Eastern District of Pennsylvania have reached the same conclusion. Id. at 681-82 (citing Ballinger v. Delaware River Port Authority, 800 A.2d 97, 105 (N.J. 2002); Miller Northern Tier Career Center, 49 Pa. D. & C. 4th 413, 417 (2000); Wilhelm v. Borough of Braddock, 28 Pa. D. & C. 4th 211, 212-13 (1996); Clark v. Lancaster City Housing Authority, 14 Pa. D. & C. 4th 411, 412-13 (1992); Zerbe v. City of Sunbury, 7 Pa. D. & C. 4th 483, 499-501 (1990); and Stoneback v. ArtsQuest (E.D. Pa., Civil Action No. 12-3286, filed October 17, 2012)).

Based on the foregoing, the Superior Court "conclude[d] that there was no common law analogue to a whistleblower claim that encompassed a right to jury trial in 1790." Bensinger, 98 A.3d at 682. Finally, the Superior Court recognized that "a whistleblower claim is statutorily based, not common law based." Id. Accordingly, the Superior Court held there is no right to a jury trial under the Whistleblower Law. Id.

Although Bensinger is not binding on this Court, the Superior Court's reasoning is very persuasive for determining that Officer Zenak did not have the right to a jury trial for the whistleblower claim. However, this fact, standing alone, does not require that we grant a new trial. In order to reverse the trial court's order denying the City's post-trial motion, we must find that the trial court's error in

permitting Officer Zenak's whistleblower claim to be heard by the jury was prejudicial to the City rather than harmless error. Department of General Services, 927 A.2d at 723. The City argues that had the whistleblower claim been tried by the trial court, the evidence could have supported a verdict in the City's favor; therefore, the trial court's error in permitting the jury to decide the whistleblower claim was inherently prejudicial and cannot be characterized as harmless.

Although there is no precedent by Pennsylvania Courts addressing the exact situation this Court is faced with here, federal courts have recognized that in situations where a plaintiff was mistakenly provided a jury trial, "[r]eversal of the jury's verdict is not required . . . if it is clear from the record that the [trial] court would have reached the same conclusion as the jury." Dombeck v. Milwaukee Valve Company, 40 F.3d 230, 237 (7th Cir. 1994).[16] Moreover, a new trial is not always required; the matter may be remanded for the trial court to make independent findings of fact and enter judgment accordingly or the trial court, in its discretion, may conduct a new bench trial if necessary. Id.

---

[16] In Dombeck, the plaintiff filed a sexual harassment action on July 28, 1992, against her employer under Title VII of the Civil Rights Act of 1964. The district court applied the Civil Rights Act of 1991 retroactively to the plaintiff's claims and determined that plaintiff was entitled to a jury trial. Dombeck, 40 F.3d at 233. The jury returned a verdict in the plaintiff's favor. Id. However, during the pendency of the various appeals, the United States Supreme Court determined that the Civil Rights Act of 1991 did not apply retroactively; thus, there was no right to a jury trial. Id. at 232. Accordingly, on appeal the Seventh Circuit was faced with the issue of whether, in light of the fact that the plaintiff had no right to a jury trial, the relief awarded was proper. Id. Upon review, the Seventh Circuit held that the submission of the plaintiff's claims to the jury was not harmless error and remanded for the district court to enter independent findings of fact and conclusions of law and to enter judgment accordingly. Id. at 237.

Here, the record shows that there was lengthy discussion between the trial court and the parties regarding the possible consequences if the whistleblower claim was submitted to the jury rather than being heard in a bench trial. (Trial Tr. at 6-17, February 26, 2014, R.R. at 1514a-25a.) The trial court believed that the City's Second Motion to Bifurcate to preclude the jury from deciding the whistleblower claim was not formally brought to the trial court's attention on the record when the trial commenced. (Trial Tr. at 6-7, R.R. at 1514a-15a.) The trial court stated further that it believed that Officer Zenak was never entitled to a jury trial on the whistleblower claim; however, Officer Zenak "maneuver[ed] the case in such a way to get it before a jury." (Trial Tr. at 15, R.R. at 1523a.) The trial court believed that this maneuvering and the City's failure to make its point clear that Officer Zenak was not entitled to a jury put the trial court in an untenable position. (Trial Tr. at 18, R.R. at 1526a.) The trial court explained that if it "were to take over the case now and dismiss the jury . . . it could later be claimed that this Court had not been sitting as a finder of fact from the start" resulting in the trial court being accused of bias. (Trial Tr. at 12, R.R. at 1520a.) Thus, the trial court concluded that the fairest and least problematic course of action was to allow the jury to hear the whistleblower claim and "simply give them appropriate instructions on what to consider." (Trial Tr. at 11-12, R.R. at 1519a-20a.)

We recognize that the submission of the whistleblower claim to the jury in this matter was not actually a mistake because the trial court was aware that Officer Zenak was not entitled to a jury trial. However, under the circumstances of this case, the trial court's belief that submitting the whistleblower claim to the jury was the fairest and least problematic course of action was not harmless error, but

27

instead was prejudicial to the City. It was due to Officer Zenak's "maneuvering" and the trial court's misunderstanding the nature of the City's Second Motion to Bifurcate that the trial court conceded its fact finding function to the jury. If the trial court had understood from the beginning that the City had moved to bifurcate before the trial commenced and would not have summarily dismissed the Second Motion to Bifurcate when trial began, the trial court would not have been placed in an untenable position. It could have functioned as the fact finder on the whistleblower claim from the very beginning of the trial and avoided the resulting problems. Moreover, given the evidence presented by the parties, we cannot state with certainty that the trial court would have reached the same conclusion as the jury on the whistleblower claim. See Dombeck, 40 F.3d at 237 (Court of Appeals was "hesitat[ant] to say that only one reasonable conclusion was possible from the evidence or that the [trial] judge would not have been justified in disregarding the jury's verdict"). While the trial court stated that "[t]he jury was free to believe or disbelieve this evidence as it saw fit," there is no indication what result the trial court would have reached. (Trial Ct. Op. at 11.) It is, therefore, possible that the evidence the trial court would have believed or disbelieved could have supported a judgment for the City. Thus, we cannot also state with certainty that the trial court's decision to submit the whistleblower claim to the jury was harmless and not prejudicial to the City.

We now turn to the question of whether the City is entitled to an entirely new trial. As recognized by the Seventh Circuit, "an appellate court reviewing a cold record" is "unable to make credibility determinations and to resolve existing factual disparities," but the trial court here "would not operate under the same

28

disability" because the "court heard the evidence along with the jury." Id. As such, the error here in submitting Officer Zenak's whistleblower claim to the jury could be cured by the trial court making independent findings of fact and conclusions of law. Id. Moreover, if the trial court believes that it must conduct further proceedings to resolve Officer Zenak's whistleblower claim, including a new bench trial, that decision is within the trial court's discretion. Id.

Accordingly, the City has demonstrated that the trial court's decision to submit the whistleblower claim to the jury was prejudicial and, therefore, constitutes error. As such, we will remand this matter for further proceedings on the whistleblower claim in accordance with this opinion.[17]

## IV. CONCLUSION

For the foregoing reasons, we affirm the trial court's Order denying Officer Zenak's post-trial motion and reverse the trial court's Orders denying the City's post-trial motions. This matter is remanded to the trial court to make independent findings of fact and conclusions of law on Officer Zenak's whistleblower claim or, in its discretion, hold a new bench trial.

_____
**RENÉE COHN JUBELIRER, Judge**

---

[17] Due to our disposition of this issue, we need not address the other issues raised by the City in its appeal to this Court.

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Paul Zenak                              :
                                        :
             v.                         :    No. 1194 C.D. 2014
                                        :
Police Athletic League of               :
Philadelphia, City of Philadelphia      :
                                        :
Appeal of: City of Philadelphia         :

Officer Paul Zenak,                     :
                                        :
                    Appellant           :
                                        :
             v.                         :    No. 1801 C.D. 2014
                                        :
Police Athletic League of Philadelphia  :

# **O R D E R**

**NOW**, January 6, 2016, the June 24, 2014 Order of the Court of Common Pleas of Philadelphia County (trial court) denying "Plaintiff's Motion for Post-Trial Relief" is **AFFIRMED**; the June 24, 2014 Orders of the trial court denying "Defendant City of Philadelphia's Motion for Post-Trial Relief" and the "Defendant City of Philadelphia's Supplemental Motion for Post-Trial Relief" are **REVERSED**. This matter is **REMANDED** for further proceedings in accordance with the foregoing opinion.

Jurisdiction relinquished.

_____
**RENÉE COHN JUBELIRER, Judge**